[No. 47317–0.   En Banc.   July 30, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. PETER J. ADLINGTON–KELLY, *Petitioner*.

*Steven W. Thayer* and *William K. Thayer*, for petitioner.

*James E. Carty, Prosecuting Attorney*, and *Roger A. Bennett, Deputy*, for respondent.

DIMMICK, J.—At issue is whether the penalty enhancement provisions of the Uniform Firearms Act, RCW 9.41-

.025, may be applied to a conviction for first degree assault. Although this is a matter of first impression for this court,[1] the issue has been before the Court of Appeals on several occasions with Divisions One and Two reaching opposite conclusions. *Compare State v. Wilson,* 25 Wn. App. 891, 611 P.2d 1312 (1980), *and State v. Caldwell,* 23 Wn. App. 8, 591 P.2d 849 (1979), *rev'd on other grounds,* 94 Wn.2d 614, 618 P.2d 508 (1980), *with State v. Miles,* 24 Wn. App. 430, 601 P.2d 971 (1979). We find the reasoning of *State v. Miles, supra,* persuasive and hold the enhancement provisions applicable to first degree assault convictions.

In the early evening of January 6, 1978, a car driven by John Landis was slightly grazed by a passing vehicle. When the car failed to stop, Landis gave chase, honking his horn and flashing his headlights. Eventually, the second vehicle pulled over and Landis approached the other driver and began to question him about insurance coverage. The other driver acted belligerently, however, and Landis attempted to retreat toward his car after noticing that the other driver had a shiny object in his hand. Before Landis could return to his car, he was shot in the back. The other driver immediately drove off, but Landis remained conscious and was able to give the police the license number and general description of the car that his assailant was driving. The police discovered that the car was leased to the defendant, who resided in the area. The defendant, Peter Joseph Adlington–Kelly, was contacted by the police later that evening and it was determined he had been drinking. He denied owning a gun, but a revolver holster was found under the seat of his vehicle.

At trial, Dennis Henry, a coworker of defendant, testified that he had given the defendant a .38 Smith & Wesson revolver in trade for another weapon in November 1977.

---

[1] In *State v. Foster,* 91 Wn.2d 466, 589 P.2d 789 (1979), where we held that the 5–year minimum penalty of RCW 9.41.025 applied to a conviction of second degree assault, we noted in dicta that had defendant been convicted of assault in the first degree, under RCW 9A.36.010(1)(a) the application of the firearm enhancement statute might not have been proper.

The weapon was never recovered. A .38 caliber empty shell case was found in the defendant's bedroom and another in a drawer elsewhere in the defendant's residence. A criminalist testified at trial that the bullet removed from the victim could only have been fired from a Smith & Wesson .38 caliber revolver, or from a Hopkins & Allen model SA.38 pistol.

Defendant was convicted by a jury of first degree assault and by special verdict of committing the crime while in possession of a firearm.[2] He was sentenced to a maximum of 40 years in prison.[3] The conviction was affirmed by Division Two of the Court of Appeals in an unpublished opinion. *State v. Adlington–Kelly*, 26 Wn. App. 1036 (1980). Defendant herein contends that the penalty enhancement provision cannot be applied to first degree assault; and therefore, the trial court erred in requiring the jury to determine by special verdict whether defendant was armed with a firearm at the time of the commission of the assault.

## I

Assault in the first degree is defined in RCW 9A.36.010 as follows:

> (1) Every person, who with intent to kill a human being, or to commit a felony upon the person or property of the one assaulted, or of another, shall be guilty of assault in the first degree when he:
>
> (a) Shall assault another with a firearm or any deadly weapon or by any force or means likely to produce death; or
>
> (b) Shall administer to or cause to be taken by another, poison or any other destructive or noxious thing so as to endanger the life of another person.

---

[2] A supplemental information alleging habitual criminal status was filed and following a waiver of jury trial, defendant was acquitted by the trial court.

[3] The judgment and sentence makes no mention of a firearm or a deadly weapon, but reads that the defendant having been convicted of first degree assault, RCW 9A.36.010(1)(a), is sentenced to "40 years to run consecutive with Clark County Superior Court No. 10128—Cause No. 10128 shall be first served." The record does not disclose any facts about cause No. 10128.

(2) Assault in the first degree is a class A felony.

RCW 9A.36.020 defines assault in the second degree as:

(1) Every person who, under circumstances not amounting to assault in the first degree shall be guilty of assault in the second degree when he:
(a) With intent to injure, shall unlawfully administer to or cause to be taken by another, poison or any other destructive or noxious thing, or any drug or medicine the use of which is dangerous to life or health; or
(b) Shall knowingly inflict grievous bodily harm upon another with or without a weapon; or
(c) Shall knowingly assault another with a weapon or other instrument or thing likely to produce bodily harm; or
(d) Shall knowingly assault another with intent to commit a felony.
(2) Assault in the second degree is a class B felony.

The firearm penalty enhancement provisions are embodied in RCW 9.41.025, which reads in relevant part:

Any person who shall commit or attempt to commit any felony, or any misdemeanor or gross misdemeanor categorized herein as inherently dangerous, while armed with, or in the possession of any firearm, shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided:
(1) For the first offense the offender shall be guilty of a felony and the court shall impose a sentence of not less than five years, which sentence shall not be suspended or deferred . . .

Defendant contends that *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978), is controlling, therefore the penalty enhancement provisions cannot be used to require a mandatory minimum sentence for first degree assault. In *Workman*, we held that the firearm penalty enhancement provisions could not be applied to a conviction for first degree robbery on the basis that being armed with a deadly weapon was an element of the crime. We applied traditional rules of statutory construction. First, under the rule of lenity, a criminal statute cannot be interpreted so as to increase the penalty imposed, absent clear evidence of leg-

islative intent to do so. Evidence of such legislative intent was absent under the robbery statute, RCW 9A.56.200 and .210[4] In fact, the legislature in 1975 specifically addressed firearms use during the commission of robberies by enacting degrees. Thus, under the robbery statute the presence of a firearm enhances punishment by raising the degree of the crime from second to first degree and increases the penalty from a maximum of 10 years in prison and/or a $10,000 fine to a maximum of 20 years in prison and/or a $10,000 fine. *See Workman,* at 454–55. Finally, we noted that where both statutes address the same concern, the terms of the specific statute (*i.e.,* the robbery statute) take precedence over the general statute (*i.e.,* the firearm penalty enhancement statute). *Workman,* at 454.

*Workman* stemmed from the United States Supreme Court's decision in *Simpson v. United States,* 435 U.S. 6, 55 L. Ed. 2d 70, 98 S. Ct. 909 (1978). Simpson, a bank robber, received a 25–year term for armed robbery and, in addition, a 10–year consecutive term for committing a federal felony with a firearm. The Supreme Court reversed the additional sentence and held that a defendant, upon being convicted and sentenced for armed robbery under 18 U.S.C. § 2113(d),[5] which raises the penalty for robbery from 20 years in prison and/or a $5,000 fine, to 25 years and/or a

---

[4]RCW 9A.56.200 states:

"(1) A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:

"(a) Is armed with a deadly weapon; or

"(b) Displays what appears to be a firearm or other deadly weapon; or

"(c) Inflicts bodily injury.

"(2) Robbery in the first degree is a class A felony."

RCW 9A.56.210 states:

"(1) A person is guilty of robbery in the second degree if he commits robbery.

"(2) Robbery in the second degree is a class B felony."

[5]18 U.S.C. § 2113(d) states:

"(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty–five years, or both."

$10,000 fine when the robbery is committed "by the use of a dangerous weapon or device," could not have his sentence again enhanced pursuant to the provision of 18 U.S.C. § 924(c).[6] That section provides that when a defendant uses a firearm in the commission of a felony, he "shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years."

In so ruling, the Supreme Court first examined the legislative history of 18 U.S.C. § 924(c), wherein the sponsor indicated that the enactment was not designed to apply the firearm enhancement provision to statutes which already define the penalties for the use of firearms, including 18 U.S.C. § 2113.[7] The *Simpson* court then reasoned that

---

[6]18 U.S.C. § 924(c) states:

"Whoever—

"(1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States, or

"(2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States.

"shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to a term of imprisonment for not less than two nor more than twenty-five years and, notwithstanding any other provision of law, the court shall not suspend the sentence in the case of a second or subsequent conviction of such person or give him a probationary sentence, nor shall the term of imprisonment imposed under this subsection run concurrently with any term of imprisonment imposed for the commission of such felony."

[7]The sponsor of what is now 18 U.S.C. § 924(c) stated on the floor of the House of Representatives:

"For the sake of legislative history, it should be noted that my substitute is not intended to apply to title 18, sections 111, 112 or 113 which already define the penalties for the use of a firearm in assaulting officials, with sections 2113 or 2114 concerning armed robberies of the mail or banks, with section 2231 concerning armed assaults upon process servers or with chapter 44 which defines other firearm felonies." *Id.*, at 22232.

*Simpson, supra* at 13.

The United States Supreme Court has recently ruled, in *Busic v. United States,* 446 U.S. 398, 64 L. Ed. 2d 381, 100 S. Ct. 1747 (1980), that the enhancement provisions of 18 U.S.C. § 924(c) were not applicable to 18 U.S.C. § 111,

since there was ambiguity concerning the ambit of the armed robbery statute, the ambiguity "should be resolved in favor of lenity.'" *Simpson,* at 14, quoting *United States v. Bass,* 404 U.S. 336, 347, 30 L. Ed. 2d 488, 92 S. Ct. 515 (1971). Finally, the court stated that precedence should be given to the terms of the more specific statute when a general statute and a specific statute speak to the same concern. As previously noted, we applied these latter two arguments in *Workman.*

Our firearm penalty enhancement scheme, however, is distinguishable from its federal counterpart. Under the federal statute, the crime of committing a federal offense while armed with a firearm is an additional crime which must run consecutively with any sentence for the underlying felony. *United States v. Ramirez,* 482 F.2d 807 (2d Cir.), *cert. denied,* 414 U.S. 1012, 38 L. Ed. 2d 251, 94 S. Ct. 379 (1973). The Washington courts, on the other hand, have construed RCW 9.41.025 as augmenting the penalty for one who commits a crime while armed with a firearm rather than as creating a separate crime. *State v. Frazier,* 81 Wn.2d 628, 503 P.2d 1073 (1972). In essence, our firearm enhancement provision insures that one convicted of committing a crime while armed with a firearm will in fact receive a 5–year minimum term by preventing the sentencing judge from deferring or suspending the sentence. Our holding in *Workman* greatly expanded the Supreme Court's holding in *Simpson.*

We find, however, the *Workman/Simpson* rationale inapplicable to the assault statutory scheme as our assault statute contains none of the types of ambiguity contained in either the state or federal robbery statutes.

Our legislative history of assault differs substantially from that of robbery. Robbery, a felony, was defined in the Laws of 1909, ch. 249, § 166, p. 938 (later codified as RCW

---

which prohibits assaulting, resisting and impeding certain federal officers and employees. *Busic,* then, is merely a reiteration of *Simpson* as both sections were covered in the quoted legislative history.

9.75.010) as the unlawful taking of property from a person, by force or violence. In 1969, the firearm enhancement provisions were passed which obviously applied to robbery and to many other felonies. In 1975, the robbery statute was revamped into degrees. First degree robbery by use of a weapon became a class A felony. Second degree robbery, a class B felony, covered all other acts.

Conversely, the assault statute since 1909 has always been divided into degrees and the operative language of first and second degree assault was not changed when the criminal code was revised in 1975. The legislature clearly provided in both first and second degree assault that the use of a firearm may be an alternate method of assault. Thus, the presence of a firearm does not elevate the crime of second degree assault to first degree assault as a firearm is not a necessary element for any degree of assault. Instead, the two degrees of assault are distinguished on the basis of *intent.* First degree assault may be accomplished by use of a firearm or other deadly weapon, poison, force, or any means likely to produce death. Second degree assault may also be accomplished in a number of ways. However, the distinction is that assault in the first degree involves an "intent to kill" a human being or to commit a felony upon the person or property of the one assaulted, by means likely to produce death. In second degree assault, the intent is to "injure" or "inflict grievous bodily harm" upon another, with or without a weapon, or thing likely to produce bodily harm, or with intent to commit a felony. Assault in the third degree also may be committed in a number of ways, either with or without a weapon.

Under the firearms statute, RCW 9.41.025(4), inherently dangerous crimes include assault in the third degree by definition. Therefore, it is clear that one committing the crime of assault in the third degree with a firearm, must have his penalty enhanced by the mandatory 5–year minimum which cannot be suspended or deferred; and that one committing the crime of assault in the second degree must likewise have his penalty enhanced in the same manner.

*State v. Foster,* 91 Wn.2d 466, 589 P.2d 789 (1979), *see* footnote 1 above. Can we in any way presume that the legislature did not intend that one who was convicted of assault in the first degree with a firearm would not also have his penalty enhanced?[8]

The legislature has recognized that use of a firearm has greater consequences than use of a lesser weapon or other force. There is little opportunity for a victim to defend against a firearm. Therefore, if a defendant uses a firearm to commit the crimes of assault in the first, second or third degree, he will receive a mandatory minimum sentence of 5 years in prison, thereby removing from the trial court the discretion to either suspend or defer such sentence. There is no ambiguity; there is no reason for lenity.

The Court of Appeals is affirmed.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, DOLLIVER, HICKS, WILLIAMS, and DORE, JJ., concur.

UTTER, J. (dissenting)—*State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978), is controlling and warrants the reversal of this case.

The thrust of the majority's argument is that *Workman* is distinguishable because the robbery statutes are ambiguous while the assault provisions are not. The applicable robbery statute provides:

(1) A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:

---

[8]The 1981 session of the legislature, following our decision in *Workman,* reiterated their intention by amending RCW 9.41.025 as follows:

"Any person who shall commit or attempt to commit any felony, including but not limited to assault in the first degree, rape in the first degree, burglary in the first degree, robbery in the first degree, riot, or any other felony which includes as an element of the crime the fact that the accused was armed with a firearm, or any misdemeanor or gross misdemeanor categorized herein as inherently dangerous, while armed with, or in the possession of any firearm, shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided . . ." Laws of 1981, ch. 258, § 1, p. 1066.

(a) Is armed with a deadly weapon; or

(b) Displays what appears to be a firearm or other deadly weapon; or

(c) Inflicts bodily injury.

(2) Robbery in the first degree is a class A felony.

RCW 9A.56.200. The first degree assault provision states:

(1) Every person, who with intent to kill a human being, or to commit a felony upon the person or property of the one assaulted, or of another, shall be guilty of assault in the first degree when he:

(a) Shall assault another with a firearm or any deadly weapon or by any force or means likely to produce death; or

(b) Shall administer to or cause to be taken by another, poison or any other destructive or noxious thing so as to endanger the life of another person.

(2) Assault in the first degree is a class A felony.

RCW 9A.36.010. Both statutes, when viewed alone, are not ambiguous; and the statute for robbery is no more ambiguous than that for assault.

The ambiguity to which *Workman* referred was that when the first degree robbery and firearm enhancement provisions are considered together, it is unclear whether the legislature intended both to apply. In explaining *Simpson v. United States*, 435 U.S. 6, 55 L. Ed. 2d 70, 98 S. Ct. 909 (1978), and also explicative of the *Workman* rationale, Justice Rehnquist has recently stated:

*Simpson,* however, was based to an unstated degree on this Court's assumption that § 924(c) raised "the prospect of double jeopardy" because it provided for additional punishment on "precisely the same factual showing" as would be necessary for conviction of the underlying felony involved in that case.

*Busic v. United States,* 446 U.S. 398, 418, 64 L. Ed. 2d 381, 100 S. Ct. 1747 (1980) (Rehnquist, J., dissenting). That is exactly the same problem (and to use *Workman*'s vernacular, the same ambiguity) which arises when the first degree assault and firearm statutes are viewed together.

In *Busic,* the United States Supreme Court rejected the very reasoning used by the majority. There, two punish-

ment statutes[9] were not ambiguous by themselves, but when considered together they did not reveal which one was to apply. The government argued that *Simpson* did not control because the statutes in *Busic* were not ambiguous and, therefore, the "rule of lenity" and other statutory rules of construction, used in *Simpson,* were not applicable. *Busic,* at 407. To that, the court stated:

> [T]he claim that there exists no ambiguity does not stand up. Plainly the text of the statute fails to address the issue pertinent to decision of this case—whether Congress intended (1) to provide for enhanced penalties only for crimes not containing their own enhancement provisions, (2) to provide an alternative enhancement provision applicable to all felonies, or (3) to provide a duplicative enhancement provision which would permit double enhancement where the underlying felony was proscribed by a statute like § 111. Our task here, as in *Simpson,* is to ascertain as best we can which approach Congress had in mind. The rule of lenity, like reference to appropriate legislative materials, is one of the tools we use to do so.

---

[9]The two statutes are 18 U.S.C. § 111 and 18 U.S.C. § 924(c).

18 U.S.C. § 111 provides as follows:

"Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

"Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

18 U.S.C. § 924(c) provides:

"Whoever—

"(1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States, or

"(2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States[,]

"shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to a term of imprisonment for not less than two nor more than twenty-five years and, notwithstanding any other provision of law, the court shall not suspend the sentence in the case of a second or subsequent conviction of such person or give him a probationary sentence, nor shall the term of imprisonment imposed under this subsection run concurrently with any term of imprisonment imposed for the commission of such felony."

*Busic,* at 407. The court further noted that in interpreting punishment enhancing statutes, they should not be read to increase or multiply punishment "absent a clear and definite legislative directive.'" *Busic,* at 406–07.

That clear legislative directive is as absent in the first degree assault statute as it was in the robbery provisions reviewed in *Workman.* When RCW 9A.36.010 and RCW 9.41.025 are read together, it is unclear whether the legislature intended both to apply.

The majority also attempts to underplay the significance of *Workman* by stating that the use of a firearm is not a necessary element of first degree assault. Interestingly enough, the use of a firearm is also not a necessary element of the first degree robbery statutes reviewed in *Workman.* Under RCW 9A.56.200(1)(c), one can commit first degree robbery by simply inflicting bodily injury. Therefore, use of a firearm is not an indispensable condition for first degree robbery, just as it is not for first degree assault.

The majority's "intent" distinction is similarly without foundation. It states that the degrees of assault, as opposed to those of robbery, are determined by the intent of the defendant. First degree assault involves the "intent to kill," it states, whereas second degree assault only requires the "intent to injure." I do not believe this is correct. For example, a defendant with the intent to kill, but who assaults the victim with a relatively innocuous object not likely to produce death, is only guilty of second degree assault. The intent to kill does not invariably lead to a first degree conviction.

The majority justifies its result by asking the question: "Can we in any way presume that the legislature did not intend that one who was convicted of assault in the first degree with a firearm would not also have his penalty enhanced?"[10] Majority opinion, at 925. By asking that

---

[10]To support its reading of legislative intent, the majority cites the recent amendment nullifying the *Workman* result. Majority opinion, at 925. That

question, the majority reveals a misperception of the problem, for the legislature by providing for varying degrees of assault has already enhanced the penalties when a firearm is used. The majority's approach is also inconsistent with our judicial role. As noted by the United States Supreme Court:

> [T]he Government's argument is not that our construction reads Congress to have *diminished* the penalty for firearm use, but only that our construction fails to enhance that penalty to the hilt. Yet it is patently clear that Congress too has failed to enhance that penalty to the hilt—it set maximum sentences as well as a variety of other limits on the available punishment. Thus, while Congress had a general desire to deter firearm abuses, that desire was not unbounded. Our task here is to locate one of the boundaries, and the inquiry is not advanced by the assertion that Congress wanted no boundaries.

*Busic,* at 408. Similarly, in response to the argument that selectively applying the firearm provision may result in anomalies not intended by the legislature,[11] the court stated:

> [T]o the extent that cases can be hypothesized in which this holding may support curious or seemingly unreasonable comparative sentences, it suffices to say that the asserted unreasonableness flows not from *Simpson* and this decision, but rather from the statutes as Congress wrote them. If corrective action is needed, it is the Congress that must provide it. "It is not for us to speculate, much less act, on whether Congress would have altered its stance had the specific events of this case been anticipated." *TVA v. Hill,* 437 U. S. 153, 185 (1978).

---

amendment, rather than supporting the majority's decision, constitutes an acknowledgment by the legislature that RCW 9.41.025 had been ambiguous and was not the clear directive required by the United States Supreme Court. Moreover, that amendment cannot be applied retroactively, which is the effect of the majority opinion. At the time of this appeal, *Workman* was still the law and we cannot refuse to apply that law because of *post hoc* legislative enactments.

[11]If my position were accepted, then under the existing statutes RCW 9.41.025 would apply to second but not first degree assault. *See State v. Foster,* 91 Wn.2d 466, 589 P.2d 789 (1979).

*Busic,* at 404–05.

Since this case cannot, with any analytical purity, be distinguished from *Workman,* RCW 9.41.025 cannot be read to augment the punishment for first degree assault. *Workman* held that the firearm enhancement statute is inapplicable to convictions for first degree robbery, because the robbery and firearm provisions do not clearly state whether both are to apply. Confronted with that ambiguity, we applied the rules of statutory construction to reach the *Workman* result.

Given, as shown above, that the first degree assault and firearm enhancement statutes have the same ambiguity that was present in *Workman,* and since the same rules of statutory construction are equally applicable to the statutes of this case, I must conclude that RCW 9.41.025 cannot enhance the punishment for first degree assault.

That is precisely the result we predicated in *State v. Foster,* 91 Wn.2d 466, 589 P.2d 789 (1979). There, we stated that "[h]ad appellant been convicted of assault in the first degree under RCW 9A.36.010(1)(a)," RCW 9.41-.025 might not have been applicable. *Foster,* at 477. We made that statement because, as the appellant there argued, RCW 9.41.025 by its express terms "does not apply to conviction for offenses which require the use of a deadly weapon . . ." *Foster,* at 477.

*Workman* requires that the decision of the Court of Appeals be reversed.

Reconsideration denied October 6, 1981.