[No. 9383-5-I. Division One. April 26, 1982.]

THE STATE OF WASHINGTON, *Respondent*, v. DONALD
RAY LOTTIE, *Appellant*.

*Richard Downs,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Katharine B. Wilcox, Deputy,* for respondent.

CORBETT, J.—Donald Ray Lottie appeals his conviction for two counts of murder in the first degree. We affirm.

On June 11, 1980, a fire at the home of Cassandra Edwards resulted in the deaths of two of her children, ages 4 and 5. That day about 5 p.m., the defendant, who had previously resided with Ms. Edwards, took his daughter from Ms. Edwards' home. He testified that before having dinner with the child, he took two Valium tablets for a toothache. He returned to Ms. Edwards' home briefly around 6:30 p.m. Around 7, defendant and three friends

consumed a bottle of wine at his residence. His friends left around 8, and the defendant began feeling tired due to his consumption of the Valium and alcohol. He fell asleep, and the next thing he remembered was walking towards Ms. Edwards' burning home.

Ms. Edwards testified that the defendant picked up his child and returned around 8 p.m., at which time he verbally threatened her. She did not let him into the house because she thought he had a gun. She claimed that he came to her door again around 9:45 and she still did not let him in. According to Ms. Edwards, defendant argued with her for 10 or 15 minutes and then poured gasoline into the mail slot of her front door. After making a threatening remark, he threw a match into the gasoline. Ms. Edwards was on the phone with a friend at this time and the friend testified that she could hear the defendant's threatening words to Ms. Edwards. The fire spread so quickly that Ms. Edwards was unable to rescue her children.

Ms. Edwards' brother found the defendant outside the burning home and began fighting with him. The police observed that the defendant defended himself but did not fight back. The defendant underwent a drug screening test at the scene and a blood alcohol test later. The drug test produced a negative reading but the blood alcohol reading was .10 percent. A fire department investigation revealed that the fire had begun in the area of the mail slot and was caused by a flammable liquid. Evidence of a flammable liquid was found in a milk carton near the front door, in an ashtray inside the mail slot, and on the clothing that defendant had worn at the time of the fire. This evidence was received at a bench trial after which the court entered written findings of fact and conclusions of law. The trial judge concluded that the defendant was guilty of first degree murder because he had knowingly and maliciously set fire to the residence and that the two children died as a direct result of that fire.[1]

---

[1]RCW 9A.32.030 states, in pertinent part:

Defendant first contends that the trial court erred by not making a specific finding on the defense of involuntary intoxication. This defense was not argued to the trial court. Appellate counsel's position is that after taking Valium and consuming alcohol, the defendant did not remember doing the acts alleged and, therefore, could not have formed the requisite intent to commit the crime of arson.[2]

■ Under the previous criminal code involuntary intoxication was a valid defense to both general and specific intent crimes. *State v. Mriglot,* 88 Wn.2d 573, 576, 564 P.2d 784 (1977). However, the degree of intoxication necessary to excuse a general intent crime was greater than that required to excuse a specific intent crime. *Id.* at 576. Arson was considered a "general" intent crime until the new criminal code, RCW Title 9A, was enacted. *State v. Nelson,* 17 Wn. App. 66, 72, 561 P.2d 1093 (1977). The new code was designed to replace concepts like specific and general intent with the four levels of culpability set out in RCW 9A.08.010. *State v. Edmon,* 28 Wn. App. 98, 103–04, 621 P.2d 1310 (1981). As now defined under the new code, arson requires a particular mental state, "knowledge", and the jury may take the fact of a defendant's intoxication into consideration in determining his mental state. RCW 9A.16-.090; *State v. Norby,* 20 Wn. App. 378, 380, 579 P.2d 1358

"(1) A person is guilty of murder in the first degree when:

"(a) With a premeditated intent to cause the death of another person, he causes the death of such person or of a third person; or

" . . .

"(c) He commits or attempts to commit the crime of . . . arson in the first degree, . . . and; in the course of . . . such crime . . . he, . . . causes the death of a person . . ."

[2]RCW 9A.48.020 reads, in pertinent part:

"(1) A person is guilty of arson in the first degree if he knowingly and maliciously:

"(a) Causes a fire or explosion which is manifestly dangerous to any human life, including firemen; or

"(b) Causes a fire or explosion which damages a dwelling; or

"(c) Causes a fire or explosion in any building in which there shall be at the time a human being who is not a participant in the crime . . ."

(1978). To constitute a valid involuntary intoxication defense to this crime, defendant must show a loss of his faculties such that he could not have formed the mental state to "knowingly . . . cause a fire." Defendant's claim of a blackout after voluntarily consuming drugs and alcohol was not sufficient evidence to raise involuntary intoxication as a material issue upon which the trial court was required to make a finding. *See Wold v. Wold,* 7 Wn. App. 872, 875, 503 P.2d 118 (1972).

Appellate counsel argues that the defendant was denied effective assistance of counsel at trial due to failure to argue, or ask for findings on, the defense of involuntary intoxication. Counsel directs us to a statement made during closing argument in which the trial attorney indicated an erroneous belief that arson is a specific intent crime, and which allegedly caused the trial court to overlook the involuntary intoxication defense. It is also suggested that trial counsel was incompetent because he failed to object to admission of testimony concerning the drug screen and its results.

■ As our Supreme Court has recognized:

Counsel is not, at the risk of being charged with incompetence, obliged to raise every conceivable point, however frivolous, damaging or inconsequential it may appear at the time, or to argue every point to the court . . . which in retrospect may seem important to the defendant; . . .

*State v. Piche,* 71 Wn.2d 583, 590, 430 P.2d 522 (1967). The test for determining whether a criminal defendant has received effective assistance of counsel is after considering the entire record, can it be said that the accused was afforded an effective representation and a fair and impartial trial. *State v. Johnson,* 29 Wn. App. 807, 814, 631 P.2d 413 (1981); *State v. Adams,* 91 Wn.2d 86, 89, 586 P.2d 1168 (1978). The appellate counsel's complaint relates to trial strategy or tactics, which cannot serve as a basis for a claim of ineffective assistance of counsel, *id.* at 90. There was no evide ice to support an involuntary intoxication defense

and the trial court properly considered the effect of voluntary intoxication. Trial counsel acted reasonably in refusing to present a defense not warranted by demonstrable facts. *State v. King,* 24 Wn. App. 495, 502, 601 P.2d 982 (1979). Affirmed.

DURHAM, A.C.J., and SWANSON, J., concur.

Reconsideration denied May 26, 1982.

Review denied by Supreme Court September 13, 1982.