[No. 11132–9–I.   Division One.   May 25, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. WILEY
J. WOODS, *Appellant.*

*Wiley J. Woods,* pro se, and *Elizabeth Selleck* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Frederick Yeatts, Deputy,* for respondent.

CALLOW, J.—Wiley J. Woods appeals a judgment and sentence entered following a jury verdict finding him guilty of five counts of first degree robbery while armed with a deadly weapon, a firearm, and one count of first degree

assault while armed with a deadly weapon, a firearm.

The following issues are presented:

1. Does the application of RCW 9.95.040, the deadly weapon statute, to a prosecution for first degree robbery or first degree assault violate the double jeopardy clause by imposing multiple punishments for the same crime?

2. Does the application of RCW 9.41.025, the firearm statute, to a prosecution for first degree robbery or first degree assault violate the double jeopardy clause by imposing multiple punishments for the same offense?

3. Was the defendant denied effective assistance of counsel?

4. Was defendant's statement to the police properly admitted into evidence?

5. Was the pretrial lineup procedure wrongly suggestive requiring suppression of the eyewitnesses' identification of the defendant?

The defendant was charged by information with five counts of robbery in the first degree under RCW 9A.56.200 and two counts of assault in the first degree under RCW 9A.36.010. The charges arose out of a series of armed robberies in Seattle on August 30, 1981. The information also alleged that each of the offenses were committed by the defendant while armed with a deadly weapon pursuant to RCW 9.95.040, which was also a firearm pursuant to RCW 9.41.025.

Defendant, along with three others, participated in a string of armed robberies between 6 a.m. and 7 a.m. on Sunday morning, August 30, 1981. The defendant drove the car to each of the three robbery locations, and he owned the guns used in the robberies and the assault. At approximately 6:15 a.m. that Sunday morning the first victim parked his car in an alley on Capitol Hill. The defendant and his three companions pulled in behind the victim's car; the defendant and another got out and came up to the victim's car, pointing guns at the victim, and the defendant Woods took the victim's wristwatch and wallet from him.

Defendant then drove his three companions to a donut

shop in West Seattle. The defendant carried a .45 automatic while his companion was armed with a .38 revolver. The defendant jumped over the counter of the donut shop, pulling the .45 automatic from his pocket, and banged on the cash register trying to open it. Defendant Woods stated, "This is a holdup, we want your wallets and all your money." Money and wallets were taken from three shop customers, and Woods withdrew to the automobile with his gun still drawn. Thereafter, the defendant went to a 7–11 store in West Seattle and entered this store with his .45 drawn. He leaped over the counter and pointed his gun at a store employee and after pulling the employee behind the counter, held the gun to the employee's head and pulled the trigger. The bullet hit this victim in the head and struck the victim's wife in the shoulder. After stealing the purse of the woman victim, the four companions fled south and were ultimately stopped by police on Interstate 5. A search of the defendant Woods pursuant to his arrest revealed the wristwatch stolen from the first victim. After being advised of his rights, Woods admitted he provided the .45 automatic and the .38 revolver for the morning's activities. He also admitted driving to the 7–11 store and firing a shot at the two clerks. Following the issuance of a search warrant the next day, a .45 automatic with four live rounds and an empty casing were found under the driver's seat of the vehicle as was a .38 revolver containing four live rounds.

Woods was ultimately found guilty by jury verdict of all five counts of first degree robbery and one count of first degree assault. One of the assault counts was dismissed by the trial court prior to submission of the case to the jury. The jury further returned special verdicts finding Woods to have been armed with a deadly weapon at the time of each offense and that the deadly weapon was a firearm. On December 18, 1981, Woods was sentenced to a maximum term of not more than 20 years on each count. Counts 2, 3 and 4 are to be served concurrently, but consecutive to count 1. Counts 5 and 6 are concurrent to each other, but

are to be served consecutively to the other counts.

Woods now appeals the judgment and sentence of the trial court.

The first issue is whether the application of RCW 9.95-.040, the deadly weapon statute, to a prosecution for first degree robbery or for first degree assault violates the double jeopardy clause by imposing multiple punishments for the same crime.

RCW 9A.56.200 states, in part:

> (1) A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:
> (a) Is armed with a deadly weapon; or
> (b) Displays what appears to be a firearm or other deadly weapon; or
> (c) Inflicts bodily injury.

RCW 9A.36.010 states, in part:

> (1) Every person, who with intent to kill a human being, or to commit a felony upon the person or property of the one assaulted, or of another, shall be guilty of assault in the first degree when he:
> (a) Shall assault another with a firearm or any deadly weapon or by any force or means likely to produce death;
> . . .

Woods was convicted of four counts of RCW 9A.56-.200(1)(b), one count of RCW 9A.56.200(1)(b) or (c), and one count of RCW 9A.36.010(1)(a). He was also found by special verdict to have been in possession of a deadly weapon under RCW 9.95.040, which was a firearm under RCW 9.41.025, during the commission of each of the offenses. Woods contends that the special verdict finding subjected him to multiple punishments for the same offense in violation of the double jeopardy clauses of the United States and Washington State Constitutions. He argues that a deadly weapon finding cannot be used both to convict him for offenses where the use of a firearm or deadly weapon is an element of the underlying offense and to enhance his punishment for those offenses. We disagree.

RCW 9.95.040 states, in part:

The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, . . . to wit:

(1) For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years.

RCW 9.95.040 does not offend the constitutional protection against double jeopardy by imposing multiple punishments based on a single deadly weapon finding even when applied to a defendant convicted of an offense where the use of a firearm or deadly weapon is an element of the underlying offense. *State v. Mitchell,* 32 Wn. App. 499, 648 P.2d 456 (1982); *State v. Willoughby,* 29 Wn. App. 828, 630 P.2d 1387 (1981); *State v. Hayden,* 28 Wn. App. 935, 627 P.2d 973 (1981); *see State v. McKim,* 98 Wn.2d 111, 653 P.2d 1040 (1982). RCW 9.95.040 does not create a separate criminal offense, and thus a separate punishment, but merely limits the discretion of the trial court and the Board of Prison Terms and Paroles in the setting of minimum sentences. *State v. Claborn,* 95 Wn.2d 629, 628 P.2d 467 (1981); *In re Carle,* 93 Wn.2d 31, 604 P.2d 1293 (1980); *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978). Hence, RCW 9.95.040 is applicable to both first degree robbery and first degree assault cases.

The second issue presented is whether the application of RCW 9.41.025, the firearm statute, to a prosecution for first degree robbery or first degree assault violates the double jeopardy clause by imposing multiple punishments for the same offense.

The double jeopardy clause protects "an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense", *Burks v. United States,* 437 U.S. 1, 11, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978) (quoting *Green v. United States,* 355 U.S. 184, 187, 2 L. Ed. 2d 199, 78 S. Ct. 221, 6 A.L.R.2d 1119 (1957)). It also "protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 23 L.

Ed. 2d 656, 89 S. Ct. 2072 (1969); *see State v. Claborn, supra* at 637. However, RCW 9.41.025, the firearm statute, does not unconstitutionally prescribe an additional or cumulative punishment for the same offense arising out of a single transaction. Rather, "[u]nder RCW 9.41.025, the trial court's discretion to suspend or defer sentence is limited if a special finding is entered by the trier of fact that the defendant was armed with a firearm." *State v. Hattori,* 19 Wn. App. 74, 82, 573 P.2d 829 (1978).

> The Washington courts . . . have construed RCW 9.41-.025 as augmenting the penalty for one who commits a crime while armed with a firearm rather than as creating a separate crime. *State v. Frazier,* 81 Wn.2d 628, 503 P.2d 1073 (1972). In essence, our firearm enhancement provision insures that one convicted of committing a crime while armed with a firearm will in fact receive a 5–year minimum term by preventing the sentencing judge from deferring or suspending the sentence.

*State v. Adlington–Kelly,* 95 Wn.2d 917, 923, 631 P.2d 954 (1981). Hence, RCW 9.41.025 does not violate the constitutional prohibition against double jeopardy. *State v. Foster,* 91 Wn.2d 466, 478, 589 P.2d 789 (1979).

Moreover, even if RCW 9.41.025 is construed to create a separate crime, thereby imposing an additional or cumulative punishment for the same offense based upon the presence of a firearm, it still would not be violative of double jeopardy. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment that the legislature intended." *Missouri v. Hunter,* __ U.S. __, 74 L. Ed. 2d 535, 542, 103 S. Ct. 673 (1983). Absent clear evidence to do so, however, under the "rule of lenity" afforded to ambiguous criminal statutes, a criminal statute will not be interpreted to increase the penalty imposed. *Missouri v. Hunter, supra; State v. Workman, supra* at 454.

In *State v. Workman, supra,* since there was no clear evidence of such legislative intent, the court applied the "rule of lenity" and held that RCW 9.41.025 could not be

applied to a conviction for first degree robbery because use of a deadly weapon was an element of the underlying crime. Conversely, *State v. Adlington–Kelly, supra,* held that since there was no ambiguity present in RCW 9A.36.010 such as that which required application of the "rule of lenity" in *State v. Workman, supra,* RCW 9.41.025 could be applied in convictions of first degree assault.

██ In 1981, the Legislature clarified its intent by specifically amending RCW 9.41.025 to state, in part:

> Any person who shall commit or attempt to commit any felony, *including but not limited to assault in the first degree, rape in the first degree, burglary in the first degree, robbery in the first degree, riot, or any other felony which includes as an element of the crime the fact that the accused was armed with a firearm,* . . . while armed with, or in the possession of any firearm, shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided:
>
> (1) for the first offense the court shall impose a sentence of not less than five years, which sentence shall not be suspended or deferred;

(Italics ours.) Laws of 1981, ch. 258, § 1, p. 1065 (effective July 26, 1981). The italicized portion of the above statute is the language added by the 1981 amendment. The statute is now made specifically applicable to convictions of certain felonies. The Legislature has made its intent clear and as a result, the "rule of lenity" is no longer applicable since the statute unambiguously states that its penalty enhancement provisions are applicable to first degree robbery, first degree assault, and other specified felonies as well as "any other felony which includes as an element of the crime the fact that the accused was armed with a firearm". RCW 9.41.025. "[T]he rule of lenity is not to be applied when no ambiguity exists." *State v. Miles,* 24 Wn. App. 430, 436, 601 P.2d 971 (1979); *see United States v. Batchelder,* 442 U.S. 114, 60 L. Ed. 2d 755, 99 S. Ct. 2198 (1979); *Simpson v. United States,* 435 U.S. 6, 55 L. Ed. 2d 70, 98 S. Ct. 909 (1978).

Legislatures, not courts, prescribe the scope of punishments.

Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger* [*v. United States,* 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180 (1932)], a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

(Footnote omitted.) *Missouri v. Hunter,* 74 L. Ed. 2d at 544.

We hold that RCW 9.41.025, by virtue of its 1981 amendment, is now applicable to prosecutions for first degree robbery under RCW 9A.56.200 just as it is to prosecutions for first degree assault under RCW 9A.36.010.

■ Woods has filed a pro se supplemental brief in which he raises several issues. The first issue he raises is a claim of ineffective assistance of counsel. At several pretrial hearings Woods made motions to proceed pro se and to dismiss counsel on grounds of ineffective assistance, but he ultimately decided he was satisfied with counsel and would retain her. However, after the jury had been sworn he again moved to dismiss his counsel claiming she was ineffective and requested the appointment of new counsel. The only basis for this contention was Woods' allegation that counsel was incompetent and incapable of representing him because she had advised him to plead guilty to three of the seven counts with which he was charged. He refused to take such advice claiming he was innocent of all the charges. On appeal, Woods again asserts that he was denied effective assistance of counsel during the pretrial and trial proceedings.

The test for determining whether a criminal defendant has received effective assistance of counsel is after considering the entire record, can it be said that the accused was afforded an effective representation and a fair and impartial trial.

*State v. Lottie,* 31 Wn. App. 651, 654, 644 P.2d 707 (1982);

*State v. Ermert,* 94 Wn.2d 839, 621 P.2d 121 (1980). A defendant is not guaranteed "successful assistance of counsel," *State v. White,* 81 Wn.2d 223, 225, 500 P.2d 1242 (1972), "and the competency of counsel is not measured by the result". *State v. Wilson,* 29 Wn. App. 895, 904 (1981). Here, Woods is unable to point to any specific error made by his counsel which rendered his representation ineffective. We will not find constitutional violations where the actions of counsel complained of involve trial tactics. *State v. Johnson,* 29 Wn. App. 807, 814, 631 P.2d 413 (1981); *State v. Ermert, supra* at 849. Moreover, a review of the entire record indicates that he was afforded effective representation and received a fair and impartial trial.

The second issue Woods raises pro se is whether his statement to the police was properly admitted into evidence. Woods contends that his statement to the police was made in violation of *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), and hence was inadmissible. He argues that the State did not meet its burden of demonstrating a knowing, voluntary, and intelligent waiver of his *Miranda* rights.

"[T]he burden is upon the State to show an intelligent and voluntary waiver by a preponderance of the evidence." *State v. Coles,* 28 Wn. App. 563, 567, 625 P.2d 713 (1981); *see State v. Braun,* 82 Wn.2d 157, 163, 509 P.2d 742 (1973). However, where the record indicates there is substantial evidence upon which a trial court could find by a preponderance of evidence that a confession was given voluntarily, the trial court's determination of voluntariness will not be disturbed on appeal. *State v. Snook,* 18 Wn. App. 339, 348, 567 P.2d 687 (1977). The record indicates that Woods was read his *Miranda* rights and that he signed a standard waiver of rights form. Although such a waiver "is not inevitably either necessary or sufficient to establish waiver", it "is usually strong proof of the validity of that waiver". *North Carolina v. Butler,* 441 U.S. 369, 373, 60 L. Ed. 2d 286, 99 S. Ct. 1755 (1979). Moreover, a waiver need not be explicit but may be inferred from particular facts

and circumstances. *State v. Coles, supra* at 567; *North Carolina v. Butler, supra.* Here, there is substantial evidence on which the trial court could have concluded that Woods knew of his right to counsel and intentionally and intelligently waived such right. Therefore, the trial court will not be reversed on appeal.

The final issue raised by Woods in his pro se brief is whether the pretrial lineup procedure was suggestive and a claim that he was not properly represented by counsel during the lineup procedure, requiring suppression of the eyewitnesses' identification.

■ Woods initially contends that he was denied his constitutional right to the presence of counsel at the pretrial lineup. However,

> The right to counsel at a lineup attaches only at or after the initiation of judicial proceedings. *Moore v. Illinois,* 434 U.S. 220, 227, 54 L. Ed. 2d 424, 98 S. Ct. 458 (1977); *Kirby v. Illinois,* 406 U.S. 682, 689, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972). This right does not attach until charges have been formally filed. *State v. Lewis,* 19 Wn. App. 35, 46, 573 P.2d 1347 (1978); *State v. Knapp,* 8 Wn. App. 825, 827, 509 P.2d 410 (1973).

*State v. Haskins,* 33 Wn. App. 185, 188, 654 P.2d 1208 (1982). The record indicates that no information had been filed against Woods at the time of the lineup and, hence, the presence of counsel was not required. Further, although the court appointed attorney who ultimately represented Woods was not present, he was represented by an attorney, a public defender, at the pretrial lineup. We find no error. *See State v. Haskins, supra; State v. Ellison,* 77 Wn.2d 874, 467 P.2d 839 (1970).

■ Woods next contends that his pretrial identification was due to an impermissibly suggestive lineup and, hence, any in-court identification of him by the eyewitnesses could not be admitted into evidence at trial. "An out-of-court identification is inadmissible if the identification procedure was so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'"

*State v. Cook,* 31 Wn. App. 165, 171, 639 P.2d 863 (1982) (quoting *Simmons v. United States,* 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968)). "Reliability is the key to determining the admissibility of such evidence." *State v. Turner,* 31 Wn. App. 843, 848, 644 P.2d 1224 (1982); *Manson v. Brathwaite,* 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977). Here, the fact that each of the victim eyewitnesses viewed Woods for a significant period of time and had no trouble identifying Woods at the lineup indicates that "no likelihood of mistaken identification was occasioned by any suggestiveness in the pretrial confrontation." *State v. Ammlung,* 31 Wn. App. 696, 700, 644 P.2d 717 (1982). Hence, the eyewitnesses' testimony was sufficiently reliable to be admitted. *See Neil v. Biggers,* 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972); *State v. Turner, supra; State v. Ammlung, supra.*

Woods has also filed, pro se, a personal restraint petition pursuant to RAP 16.3 *et seq.* This petition raises the same issues Woods raised in his supplemental pro se brief plus additional issues.

We need address only those issues not raised in Woods' pro se brief. *In re Myers,* 91 Wn.2d 120, 587 P.2d 532 (1978) set out the rule that "those issues, constitutional *or* nonconstitutional, which were known or could have been known yet were not raised at trial nor on direct appeal, may not be raised on collateral attack" by a Personal Restraint Petition. *In re Haynes,* 95 Wn.2d 648, 651, 628 P.2d 809 (1981); *see In re Lee,* 95 Wn.2d 357, 623 P.2d 687 (1980). However, the court recently held that "the failure to raise a constitutional issue for the first time on appeal is no longer a reason for automatic rejection of a Personal Restraint Petition." *In re Hews,* 99 Wn.2d 80, 87, 660 P.2d 263 (1983). Rather, it must be determined whether the petitioner has shown actual prejudice stemming from constitutional error.

Reviewing courts have three options in evaluating Personal Restraint Petitions:

1. If a petitioner fails to meet the threshold burden of

showing actual prejudice arising from constitutional error, the petition must be dismissed;

2. If a petitioner makes at least a prima facie showing of actual prejudice, but the merits of the contentions cannot be determined solely on the record, the court should remand the petition for a full hearing on the merits or for a reference hearing pursuant to RAP 16.11(a) and RAP 16.12;

3. If the court is convinced a petitioner has proven actual prejudicial error, the court should grant the Personal Restraint Petition without remanding the cause for further hearing.

*In re Hews, supra* at 88.

This being a collateral review by a Personal Restraint Petition, it must be determined whether Woods has met his burden of establishing that, more likely than not, he was actually prejudiced by constitutional error. *In re Hagler,* 97 Wn.2d 818, 826, 650 P.2d 1103 (1982).

Woods first raises numerous assignments of error which allegedly infringed upon his constitutional right to due process of law. We have thoroughly reviewed each of these claimed errors and find them to be without merit. As a result, Woods has not met his threshold burden of showing actual prejudice arising from constitutional error. The failure of Woods to establish the existence of any constitutional error does not rise to the level of possible prejudice. "The burden of proving *actual* prejudice rests with the petitioner. *Possible* prejudice will not be sufficient." *In re Hews, supra* at 93.

Woods next contends that he was denied effective assistance on appeal. This contention seems to be based on counsel's failure to raise on appeal the various assignments of error Woods has raised in his pro se brief and Personal Restraint Petition.

Appointed counsel on appeal has a duty to raise and conscientiously advocate nonfrivolous arguments on behalf of his client. *Anders v. California,* 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1966). Failure of counsel to uphold this duty may constitute a denial of a defendant's

right to effective assistance of counsel. *See High v. Rhay,* 519 F.2d 109 (9th Cir. 1975).

*State v. Jones,* 26 Wn. App. 1, 9 n.3, 612 P.2d 404 (1980). It is evident from an examination of the record that the alleged constitutional errors claimed were not arguable on their merits and were frivolous. *See United States v. Johnson,* 421 F.2d 1342 (9th Cir. 1970). Woods was not denied the effective assistance of counsel on appeal.

The Personal Restraint Petition is dismissed and the judgment and sentence of the trial court is affirmed.

DURHAM, A.C.J., and RINGOLD, J., concur.

Reconsideration denied June 20, 1983.

Review denied by Supreme Court September 23, 1983.