[No. 50399-1. En Banc. July 26, 1984.]

THE STATE OF WASHINGTON, *Petitioner*, v. CHARLES BERNARD THEILKEN, *Respondent*.

*Norm Maleng, Prosecuting Attorney,* and *Robert S. Lasnik, Senior Deputy,* for petitioner.

*Harpold & Fiori* and *Kenneth W. Fornabai,* for respondent.

PEARSON, J.—The issue presented in this case is whether the firearm and deadly weapon sentence enhancement provisions found in RCW 9.41.025 and RCW 9.95.040 may be applied to an unintentional crime such as first degree manslaughter. We hold that those provisions may be so applied.

I

On February 16, 1983, Larry Wilmorath died as a result of a gunshot wound to the head. Respondent herein, Charles Bernard Theilken, was charged by information with the crime of manslaughter in the first degree—RCW 9A.32.060(1)(a). The information also contained allegations that, at the time of the events, respondent was armed with a firearm under RCW 9.41.025, which is also a deadly weapon under RCW 9.95.040.

On May 6 and 9, 1983, the defense moved in King County Superior Court to dismiss the deadly weapon and firearm allegations, which motions were granted. The court ruled that the firearm and deadly weapon statutes could

not be applied to enhance the sentence for an "unintentional" crime such as reckless manslaughter.

The State made an offer of proof of the evidence that it would present at trial. The State indicated the evidence would show that the defendant and the victim were together at the house of a friend; that the defendant had his rifle with him; that they were engaged in conversation seated at a table; that there was a third person also present at the dwelling, the resident; that she left the room; that while she was out of the room, a shot was fired; that she returned to the room and discovered that the victim had been shot in the head with the rifle; that the defendant made statements to a person in the aid car and to the police that he had just shot his best friend: "[H]e trusted me and I pulled the trigger."

A stay of proceedings was obtained and the State filed a motion for discretionary review which was granted July 14, 1983. Certification to this court was accepted April 2, 1984.

## II

Both Theilken and the State focus their argument on RCW 9.41.025, the firearm penalty enhancement statute. The similarity between that statute and RCW 9.95.040, the deadly weapon statute which limits the discretion of the Board of Prison Terms and Paroles, leads both parties to conclude that the two statutes should be applied in the same way. We agree. *See State v. Williams*, 94 Wn.2d 531, 617 P.2d 1012 (1980).

Respondent Theilken contends that the firearm allegations were properly dismissed by the trial court because the legislative history of the firearm statute, RCW 9.41.025, indicates that that statute was not intended to apply to "unintentional" crimes such as first degree manslaughter (recklessly causing the death of another). He argues that the firearm statute is ambiguous with respect to the question of whether it encompasses reckless behavior, thus requiring this court to look to the statute's legislative history to determine legislative intent. Theilken relies heavily

on remarks made on the Senate floor during passage of RCW 9.41.025 indicating that the statute would not apply to the situation where a gun goes off accidentally. Theilken relies on these remarks in arguing that RCW 9.41.025 was intended to enhance punishment only for felons convicted of intentional crimes while armed with a firearm. Theilken further argues that, should this court be unable to discern the legislative intent behind RCW 9.41.025 from the statute's legislative history, the rule of lenity requires that any ambiguities in the statute be resolved in his favor.

## A

The question of whether RCW 9.41.025 and RCW 9.95-.040 are limited in their application to "intentional" crimes (thus excluding manslaughter) has not been directly addressed by the appellate courts of this state. In *State v. Warriner,* 100 Wn.2d 459, 463, 670 P.2d 636 (1983), we did uphold an application of the firearm and deadly weapon sentencing statutes to convictions for assault and manslaughter (negligent homicide). Defendant in *Warriner* did not, however, raise the issue now before the court; he instead argued that application of the firearm and deadly weapon statutes would be contrary to the rule of *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978) (holding that the firearm statute could not be applied to first degree robbery because being armed with a deadly weapon was an element of that crime). The court in *Warriner* rejected that argument, citing *State v. Adlington–Kelly,* 95 Wn.2d 917, 631 P.2d 954 (1981) (holding that the firearm statute applied to first degree assault). *Adlington–Kelly* is noteworthy for purposes of the case at bench in that the court there stated (in dictum) that the firearm statute would apply to *third* degree assault, as well as first and second degree assault. *Adlington–Kelly,* at 924. The significance of this statement lies in the fact that, as third degree assault may be premised upon a showing of criminal negligence, it is not an intentional crime. Theilken's contention that RCW 9.41.025 applies only to intentional crimes, then,

appears to be inconsistent with the *Adlington–Kelly* dictum.

The State also cites *State v. Crigler,* 23 Wn. App. 716, 598 P.2d 739 (1979) and *State v. Bradley,* 20 Wn. App. 340, 581 P.2d 1053 (1978), two cases in which the firearm statute was applied to convictions for first degree manslaughter. Again, the argument raised in the instant case was not raised in those cases. Moreover, *Crigler* and *Bradley* did not involve "unintentional" acts; defendants in those cases argued self–defense.

### B

The threshold question before us in a case such as this is whether the statute is ambiguous. If language of a statute is clear, its plain meaning must be given effect without resort to rules of statutory construction. *Murphy v. Department of Licensing,* 28 Wn. App. 620, 625 P.2d 732 (1981). Thus, if we are to consider Theilken's arguments regarding legislative history and the rule of lenity, there first must be a showing that RCW 9.41.025 is ambiguous regarding its application to acts which are not intentional.

RCW 9.41.025 states, in pertinent part:

> Any person who shall commit or attempt to commit any felony . . . or any misdemeanor or gross misdemeanor categorized herein as inherently dangerous, while armed with, or in the possession of any firearm, shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided . . .

We are not persuaded that this statute is ambiguous regarding its application to crimes which are not intentional. The statute applies to "any felony" committed while armed with a firearm. It is clear that not all felonies require a showing that a defendant act intentionally. *See, e.g.,* RCW 9A.32.060(1)(a) (first degree manslaughter); RCW 9A.32.070(1) (second degree manslaughter); RCW 9A.36-.030(1)(b) (third degree assault). This was just as true in 1969 when the firearm statute was enacted (Laws of 1969, 1st Ex. Sess., ch. 175, § 1, p. 1269) as it is today. In 1969 the

crime of manslaughter was codified in former RCW 9.48-.060. Under that statute, a defendant could be convicted of manslaughter merely upon a showing of ordinary negligence. *See State v. Johnson,* 69 Wn.2d 264, 272, 418 P.2d 238 (1966); *State v. Brubaker,* 62 Wn.2d 964, 966, 385 P.2d 318 (1963); *State v. Hedges,* 8 Wn.2d 652, 666, 113 P.2d 530 (1941); *State v. Williams,* 4 Wn. App. 908, 913, 484 P.2d 1167 (1971). We have stated before that, in construing legislation, "we presume the Legislature is familiar with past judicial interpretations of its enactments." *State v. McCullum,* 98 Wn.2d 484, 493, 656 P.2d 1064 (1983). Thus, we can only conclude that the Legislature, when it expressly applied the firearm sentence enhancement provisions to "any felony" committed while armed with a firearm, intended to include both intentional and unintentional felonies. When the language of a statute is clear, the courts must apply its obvious meaning. *Griffin v. Department of Social & Health Servs.,* 91 Wn.2d 616, 624, 590 P.2d 816 (1979).

Theilken, in an attempt to buttress his argument that the firearm statute is ambiguous regarding its application in this case, refers to remarks made by the court in *State v. Stephens,* 22 Wn. App. 548, 591 P.2d 827 (1979), *rev'd,* 93 Wn.2d 186, 607 P.2d 304 (1980) (holding that the enhanced penalty of RCW 9.41.025 is merely an additional minimum condition to the sentence provided by statute for the underlying crime). In *Stephens,* the court noted the "troubled history" of the firearm statute, citing several ambiguities contained therein. *Stephens,* at 554 n.4. None of the ambiguities noted in *Stephens,* however, had anything to do with the question of whether the sentence enhancement of RCW 9.41.025 could be applied to "unintentional" felonies. Thus *Stephens* is of no help to Theilken.

In short, Theilken's argument that the firearm statute is ambiguous regarding its application to first degree manslaughter is not persuasive. The words of a statute must, absent some ambiguity or a statutory definition, be accorded their usual and ordinary meaning. *Pope & Talbot,*

*Inc. v. Department of Rev.,* 90 Wn.2d 191, 194, 580 P.2d 262 (1978). The phrase "any felony" includes all crimes designated as felonies by the Legislature, regardless of the underlying requisite mental state. The meaning of a plain and unambiguous statute must be derived from the wording of the statute itself. *Paulson v. County of Pierce,* 99 Wn.2d 645, 650, 664 P.2d 1202 (1983). Thus, this court need not address Theilken's arguments concerning legislative history and the rule of lenity.

The trial court's dismissal of the firearm and deadly weapon allegations is reversed.

WILLIAMS, C.J., UTTER, BRACHTENBACH, DOLLIVER, and DIMMICK, JJ., and CUNNINGHAM, HAMILTON, and WIELAND, JJ. Pro Tem., concur.

Reconsideration denied September 4, 1984.