[No. 55682-7-I. Division One. June 19, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. PAUL MICHAEL PITTMAN, *Appellant*.

378

*Paul M. Pittman*, pro se.

*Dana M. Lind* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Janice E. Ellis, Prosecuting Attorney*, and *Craig S. Matheson, Seth A. Fine*, and *Constance M. Crawley, Deputies*, for respondent.

¶1 PER CURIAM — A jury convicted Paul Pittman of attempted residential burglary. He appeals, arguing the jury instructions were based on an incorrect definition of attempted residential burglary and his counsel was ineffective because he did not request lesser included offense instructions. The jury instructions as a whole, including the "to convict" instruction, adequately informed the jury of the applicable law. But attempted first degree criminal trespass is a lesser included offense of attempted residential burglary, and the evidence at trial supported an inference that Pittman intended only to trespass. Because there was no strategic reason for his attorney not to request a lesser included offense instruction, we reverse and remand for a new trial.

## FACTS

¶2 Around 6:00 AM on November 14, 2004, Shane Cline awoke to the sound of his dog barking furiously. He let the dog out through the rear sliding door, and she continued barking in the yard while Cline got a glass of water from the kitchen. According to Cline, he saw a man through his kitchen window, later identified as Paul Pittman, going through the top two shelves of Cline's toolbox on the deck about five and one half feet from the kitchen window.[1] Cline yelled to his wife to call 911, and he let the dog back in through the sliding door. The dog then ran barking to the front door, and Cline heard Pittman turning the door knob and making some sort of kicking-type noise at the lower part of the door. As Cline approached the door, the noise stopped. He opened the door and let the dog out, following

---

[1] Cline later testified that he and Pittman "both made contact," but he did not think Pittman saw him at the kitchen window.

her until he found her barking at Pittman, who was hiding near a lumber pile on Cline's property.

¶3 Cline told Pittman he had a gun and made Pittman drop the backpack he was wearing and lift his shirt to make sure he wasn't armed. When asked what he was doing at Cline's house, Pittman said he went to the front door to apologize after realizing that he was not at his mother's house and that it was not his mother's car he was getting into. Pittman denied going through Cline's toolbox. Snohomish County Sheriff Deputies Jess Sanders and David Zander arrived and arrested Pittman, who told them he woke up from a methamphetamine-induced blackout standing at the open door of Cline's vehicle and that he had then decided to go into Cline's house to apologize. He told them he had used the methamphetamine in the previous 12 hours. Deputy Sanders found a pipe wrench, screwdriver, and pry-type tool in Pittman's backpack. Pittman denied any knowledge about the tools. Cline could not tell whether the tools were from his toolbox. When Cline gave a statement to police, he did not mention that he saw Pittman going through his toolbox.

¶4 Pittman was charged with attempted residential burglary. At trial, Cline testified about the events of November 14, stating that Pittman appeared to be under the influence of something other than alcohol and kept telling Cline about being at a "party scene" before arriving at Cline's house. He said he was unsure if Pittman took anything from his toolbox. Deputy Sanders testified that Pittman was shaky and acted very nervous. He said that after Cline walked around his property to ensure nothing was missing, Cline told him that Pittman may have gone through his toolbox, but he could not determine whether the tools in Pittman's backpack were his or not. Crystal Lynn Kelley, Pittman's ex-girlfriend, testified that in early November 2004, sometime before November 14, Pittman fixed her toilet using his own tools, including a screwdriver and wrench, which he brought in a backpack that looked like the one Pittman wore at Cline's home. Pittman did not testify on his own behalf.

¶5 Pittman did not object to the court's jury instructions, including instruction 5 defining attempted residential burglary:

> A person commits the crime of attempted residential burglary when, with intent to commit that crime, he or she does any act which is a substantial step toward the commission of that crime.

The jury convicted Pittman and he was sentenced within the standard range.

## DISCUSSION

### I. *Jury Instructions*

¶6 Pittman argues for the first time on appeal that the jury instructions relieved the State of its burden to prove all elements of attempted residential burglary beyond a reasonable doubt. We review de novo alleged errors of law in jury instructions.[2] Jury instructions are sufficient when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law.[3] Jury instructions should be read as a whole to determine whether they meet the requirements.[4] RAP 2.5(a)(3) allows us to consider "manifest error affecting a constitutional right" for the first time on appeal. An instructional error is manifest "when it has practical and identifiable consequences in the trial of the case."[5]

¶7 Instruction 5 borrowed its language verbatim from *Washington Pattern Jury Instruction: Criminal* 100.01 (WPIC).[6] It also correctly defines an attempt crime.[7] Although no Washington court has taken issue with the

---

[2] *Del Rosario v. Del Rosario*, 152 Wn.2d 375, 382, 97 P.3d 11 (2004).

[3] *Id.*

[4] *Petersen v. State*, 100 Wn.2d 421, 441, 671 P.2d 230 (1983); *State v. Foster*, 91 Wn.2d 466, 480, 589 P.2d 789 (1979).

[5] *State v. Stein*, 144 Wn.2d 236, 240, 27 P.3d 184 (2001) (citing *State v. Green*, 80 Wn. App. 692, 694, 906 P.2d 990 (1995)).

[6] 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 100.01, at 218 (2d ed. 1994).

[7] RCW 9A.28.020(1). When attempt is an element of the charged crime, it is constitutional error not to give an instruction defining attempt for the jury. WPIC 100.01 cmt. at 218 (citing *State v. Jackson*, 62 Wn. App. 53, 813 P.2d 156 (1991)).

wording of this WPIC and there is no indication the jury was confused, Pittman maintains the WPIC is wrong. He contends instruction 5 misstated the elements of attempted residential burglary because it allowed the jury to convict him if it found he took a substantial step toward the commission of *attempted* residential burglary rather than a substantial step toward residential burglary. He cites *State v. Smith*[8] for support.

¶8 In *Smith*, the defendant was charged with conspiracy to commit murder in the first degree. But the "to convict" instruction defined conspiracy as an agreement to engage in " 'the performance of conduct constituting the crime of Conspiracy to Commit Murder in the First Degree.' "[9] In other words, it defined conspiracy as "the even more inchoate crime of conspiracy to commit conspiracy to commit murder."[10] The State agreed the instruction was defective but argued the instructions as a whole properly defined conspiracy. The Supreme Court disagreed because the "to convict" instruction, as the " 'yardstick' by which the jury measures the evidence to determine guilt or innocence," must contain all the elements of the crime and the jury is not required to look elsewhere.[11] Here, Pittman argues the "that crime" language in instruction 5 necessarily refers to attempted residential burglary, so instruction 5 is like the "to convict" instruction in *Smith* because it defines the even more inchoate crime of attempt to attempt to commit residential burglary.

¶9 This case is distinguishable from *Smith* because instruction 5 is not clearly erroneous. Reading the instruction in a straightforward, commonsense manner, the aver-

---

[8] 131 Wn.2d 258, 930 P.2d 917 (1997).

[9] *Id.* at 262 (quoting Clerk's Papers at 32).

[10] *Id.*

[11] *Id.* at 263 (quoting *State v. Emmanuel*, 42 Wn.2d 799, 819, 259 P.2d 845 (1953)).

age juror would interpret "that crime" to mean residential burglary as the parties intended. Even if instruction 5 were somehow confusing, the crucial "to convict" instruction properly asked the jury whether Pittman "did an act which was a substantial step toward commission of residential burglary," not whether he did an act which was a substantial step toward commission of attempted residential burglary. Pittman does not dispute that the "to convict" instruction accurately listed all the essential elements of attempted residential burglary. Nor does he dispute that instruction 8 accurately defined the crime of residential burglary. The jury instructions as a whole properly informed the jury of the applicable law. The alleged inadequacies in instruction 5 did not result in practicable and identifiable consequences, so Pittman cannot show manifest error reviewable for the first time on appeal.

## II. *Ineffective Assistance of Counsel*

 ¶10 Pittman argues he received ineffective assistance of counsel because his trial attorney failed to request a lesser included offense instruction on first degree attempted criminal trespass. We review ineffective assistance of counsel claims de novo based on the entire record below,[12] but there is a strong presumption that counsel provided adequate assistance.[13] A defendant must prove counsel's performance was deficient and he was prejudiced by it.[14] That is, there must be a reasonable probability that, but for counsel's error, the result would have been differ-

---

[12] *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995), *review denied*, 129 Wn.2d 1012 (1996).

[13] *State v. Townsend*, 142 Wn.2d 838, 843, 15 P.3d 145 (2001) (quoting *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995)).

[14] *Townsend*, 142 Wn.2d at 843 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 888, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992)).

ent.[15] If defense counsel's conduct can be characterized as legitimate trial strategy or tactics, it is not ineffective.[16]

### A. Workman *Test*

■■ ¶11 Under the *Workman* test, a defendant is entitled to a lesser included offense instruction if each of the elements of the lesser offense is a necessary element of the greater offense (the legal prong), and the evidence supports an inference that only the lesser offense was committed (the factual prong).[17] A person is guilty of residential burglary if, "with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle."[18] A person is guilty of first degree criminal trespass if the person "knowingly enters or remains unlawfully in a building."[19]

■■ ¶12 As the State points out, in *State v. West* we held that although first degree criminal trespass is a lesser included offense of residential burglary, it is not a lesser included offense of attempted residential burglary because a substantial step toward committing burglary does not necessarily involve a criminal trespass.[20] However, Pittman argues that *attempted* first degree criminal trespass is a lesser included offense of attempted residential burglary. He is correct. It is not possible to take a substantial step toward committing residential burglary without taking a

---

[15] *Id.* at 844 (citing *Rice*, 118 Wn.2d at 888-89).

[16] *State v. Ray*, 116 Wn.2d 531, 548, 806 P.2d 1220 (1991) (citing *State v. Kwan Fai Mak*, 105 Wn.2d 692, 731, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986), *overruled in part on other grounds by State v. Hill*, 123 Wn.2d 641, 870 P.2d 313 (1994)).

[17] *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978), *superseded by statute on other grounds as recognized in State v. Woods*, 34 Wn. App. 750, 665 P.2d 895 (1983). *See also State v. Fernandez-Medina*, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000) (clarifying that to satisfy the fact-based prong "the evidence must raise an inference that *only* the lesser included . . . offense was committed to the exclusion of the charged offense").

[18] RCW 9A.52.025(1).

[19] RCW 9A.52.070(1).

[20] 18 Wn. App. 686, 691, 571 P.2d 237 (1977), *review denied*, 90 Wn.2d 1001 (1978).

substantial step toward committing first degree criminal trespass, i.e., taking a substantial step toward entering or remaining in a building unlawfully.

¶13 Both *West* and *United States v. Weekley*[21] give examples of taking a substantial step toward committing burglary which support Pittman's argument. In *West*, the defendant stood in an alleyway near the rear of a store and put a ladder parallel to the building while looking up at the building.[22] In *Weekley*, the court cited making a duplicate key, "casing" a building, procuring floor plans, or possessing burglary tools as substantial steps toward committing burglary.[23] All of these actions are substantial steps toward committing criminal trespass. They are also substantial steps toward committing burglary if there is proof of the additional element of intent to commit a crime inside the building. Attempted first degree criminal trespass is a lesser included offense of attempted residential burglary.

■■ ¶14 Thus our focus turns to the factual prong of the *Workman* test and whether the evidence at trial raised an inference that only the lesser included offense was committed.[24] In reviewing the factual prong, we examine the evidence in the light most favorable to the party seeking the instruction.[25] However, "the evidence must affirmatively establish the defendant's theory of the case—it is not enough that the jury might disbelieve the evidence pointing to guilt."[26] Viewed in the light most favorable to Pittman,

---

[21] 790 F. Supp. 223 (E.D. Wash. 1992), *aff'd*, 24 F.3d 1125 (9th Cir. 1994).

[22] *See West*, 18 Wn. App. at 691 (citing *People v. Gibson*, 94 Cal. App. 2d 468, 210 P.2d 747 (1949)). *See also id.* (person wearing a mask, carrying a rifle, and forcing a hostage to accompany him to a bank, who could not get in because the bank door was locked, is taking a substantial step toward burglary and criminal trespass) (citing *Rumfelt v. United States*, 445 F.2d 134 (7th Cir.), *cert. denied*, 404 U.S. 853 (1971)).

[23] *See Weekley*, 790 F. Supp. at 228 (citing *United States v. Strahl*, 958 F.2d 980, 986 (10th Cir. 1992)).

[24] *Fernandez-Medina*, 141 Wn.2d at 455.

[25] *Id.* at 455-56.

[26] *Id.* at 456 (citing *State v. Fowler*, 114 Wn.2d 59, 67, 785 P.2d 808 (1990), *overruled on other grounds by State v. Blair*, 117 Wn.2d 479, 816 P.2d 718 (1991)).

the evidence supports an inference that he intended to enter Cline's home only to apologize.

¶15 While Pittman's actions were highly unorthodox, there is little evidence that he intended to commit a crime inside Cline's home. There was no dispute that he was significantly impaired from methamphetamine use. Cline testified Pittman was visibly intoxicated, confused, and jittery, and he told Cline he wanted to enter the house only to apologize for mistaking Cline's car for his mother's. Pittman kept telling Cline about being at a "party scene" before finding himself at Cline's home. Pittman told police he woke up from a methamphetamine-induced blackout and realized he was not where he thought he was, and that he wanted to enter Cline's home only to apologize.

¶16 There was nothing missing from Cline's car, although Pittman had the opportunity to take something had he wanted to. Cline did not claim to own the tools in Pittman's backpack, and Kelley testified that Pittman had brought tools in his backpack several days earlier to fix her toilet. Based on this testimony, the jury could reasonably infer that the tools in Pittman's backpack were his own, he did not steal any tools from Cline's toolbox, and he did not plan to use the tools to break into Cline's home. The jury could also have found that Pittman knew someone was home when he tried to open the door. Cline testified he did not think Pittman saw him at the kitchen window, but he was only five to six feet away, and it was immediately after Cline saw him that Pittman tried to open the door. Pittman did not run away even though Cline's dog was barking furiously outside the house and inside the house, including behind the very door that he was trying to open.

¶17 Viewed in the light most favorable to Pittman, the evidence of his intent to commit a crime inside Cline's home was so meager that a jury could have reasonably found he intended only to trespass.[27] This evidence satisfies the

---

[27] Further, his trial counsel repeatedly argued Pittman's actions were a "trespass" because there was no evidence of intent to commit a crime inside Cline's home. This certainly suggested to the jury another theory of the crime.

factual prong of the *Workman* test, and Pittman was entitled to the lesser included offense instruction. We must now determine whether his trial counsel's failure to request that instruction could be considered legitimate trial strategy.

B. *"All or Nothing" Strategy*

¶18 The State argues defense counsel's decision not to seek lesser included offense instructions was tactical because absent such instructions, the jury would have to acquit Pittman had it accepted counsel's argument that Pittman had no intent to commit a crime inside Cline's home. In *State v. Ward*,[28] we discussed whether this "all or nothing" approach was a viable defense strategy. Ward was charged with two counts of second degree assault after allegedly pointing a gun at two men attempting to repossess his car. Ward testified he believed the men were trying to steal his car and that one of them came toward him with a crowbar. Both Ward and his girl friend testified that Ward did not point his gun at the men but rather told them he had a gun and opened his jacket to show it to them. On appeal, Ward argued his trial counsel was ineffective for failing to request a jury instruction on the lesser included offense of unlawful display of a weapon.

¶19 Viewing the evidence in the light most favorable to Ward, we held that a jury could decide he committed only the crime of unlawful display of a weapon. We further held that his counsel's "all or nothing" approach, deciding not to request an instruction on the lesser included offense, was not legitimate trial strategy under the circumstances.[29] There was a significant difference in penalties between second degree assault and unlawful display of a weapon, Ward's defense was the same for both the lesser and greater offenses, and there was an inherent risk in relying solely on

---

[28] 125 Wn. App. 243, 104 P.3d 670 (2004).

[29] *Id.* at 250.

Ward's claim of self-defense.[30] We quoted the United States Supreme Court's reasoning in *Keeble v. United States*,[31] which bears repeating here:

> "It is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction . . . precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction."[32]

¶20 Here, his counsel's failure to request a lesser included offense instruction left Pittman in the tenuous position the *Keeble* opinion described. One of the elements of the offense charged was in doubt—his intent to commit a crime inside Cline's home—but he was plainly guilty of some offense. Under those circumstances, the jury likely resolved its doubts in favor of conviction of the greater offense. It was undisputed that Pittman attempted to unlawfully enter Cline's home. He told Cline and the police that he intended to go inside to apologize. His entire defense was that he never intended to commit a crime once he was inside Cline's home. This was a risky defense because, as the *Keeble* Court said, he clearly committed a crime similar to the one charged but the jury had no option other than to convict or acquit.

¶21 The penalties for the lesser and greater offenses vary significantly. Attempted residential burglary, based on Pittman's offender score of 2, is a class C felony with a

---

[30] *Id.* at 249-50.

[31] 412 U.S. 205, 93 S. Ct. 1993, 36 L. Ed. 2d 844 (1973).

[32] *Id.* at 250 (alteration in original) (quoting *Keeble*, 412 U.S. at 212-13).

standard range of 9 to 10½ months.[33] Attempted first degree criminal trespass is a misdemeanor carrying a maximum penalty of 90 days in jail.[34] If the jury did not believe Pittman acted lawfully but doubted whether he intended to commit a crime inside Cline's home, he would have been convicted only of a misdemeanor and faced minimal, if any, time in jail.

¶22 Pittman's counsel clearly thought this was a trespass case and said several times that there was no intent to commit a crime inside Cline's home. During trial, counsel cross-examined Deputy Sanders about why the State did not charge Pittman with trespass:

Q. Wouldn't you have told [Cline] you can charge [Pittman] with trespass instead?

A. Well, I felt he was a victim of a possible attempted burglary, and I want somebody charged with the crime that they committed.

Q. Well, he committed a trespass, didn't he?

A. I also believe he committed an attempted burglary.

Counsel moved for dismissal based on lack of evidence of Pittman's intent to commit a crime inside Cline's home. He argued that "[a]lthough we have lots of intent to trespass, there's been nothing other than the fact that he was on the porch that would show that he intended to commit a theft." During closing arguments, he stated several times that Pittman committed an attempted trespass rather than attempted burglary, and that the State should have charged Pittman with the lesser crime.[35] He even stated, "I believe in my heart admittedly he's guilty of trespassing. . . . [I]f he was charged appropriately, we'd save everybody a lot of

---

[33] RCW 9A.52.025(2); RCW 9A.28.020(3)(c).

[34] RCW 9A.52.070(2); RCW 9A.28.020(3)(c); RCW 9.92.030.

[35] *See, e.g.*, Report of Proceedings (Jan. 11, 2005) at 116 ("There is a trespass. There is a guy who's jacked up on methamphetamine and he shouldn't be. There's nothing else there."); ("It doesn't add up. What it adds up to is a trespass. . . . It's not a residential burglary because the intent is just not there."); ("This was a trespass. For the sake of that homeowner, he should be prosecuted that way. It's not. It's a damn shame.").

time and expense." Yet he never asked for a lesser included instruction on attempted first degree criminal trespass. As in *Ward*, his failure to do so was not legitimate trial strategy under the circumstances.[36]

¶23 Because Pittman committed an offense similar to the one charged, his counsel's "all or nothing" strategy exposed him to a substantial risk the jury would convict on the only available option, attempted residential burglary. The State's evidence of intent to commit a crime inside Cline's home was weak, especially considering there was no proof Pittman stole anything from Cline's car or toolbox despite having the opportunity. There is a reasonable likelihood that given the chance, the jury would have convicted Pittman of attempted first degree criminal trespass instead of attempted residential burglary. His counsel's failure to seek lesser included offense instructions constituted ineffective assistance of counsel.

¶24 We reverse and remand for a new trial.

Reconsideration denied August 11, 2006.

---

[36] We note that in all other respects, Pittman's trial counsel vigorously pursued a defense and advocated for his client.