# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47989-3-II |
| Respondent, | |
| v. | |
| DUSTIN ALLEN ROSE, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Dustin A. Rose appeals his conviction for attempted first degree residential burglary.  We hold that the State presented sufficient evidence to support Rose's conviction for attempted first degree residential burglary.  But we also hold that Rose was entitled to a lesser included instruction on attempted first degree criminal trespass and his counsel's failure to propose the instruction was deficient, prejudiced Rose, and constitutes reversible error.  Thus, we reverse Rose's conviction and remand for further proceedings consistent with this opinion.

## FACTS

Nicole Miller lived with her teenage son in a duplex[1] in Tumwater.  Miller's back fence separated her backyard from Rose's backyard, located behind Miller's duplex.  One night, at approximately 11:30 p.m., Miller was lying awake in bed and she heard what she thought was someone walking on the landscape rocks in her backyard.  She looked toward the window but did not see anything.  As she started dozing off, Miller heard the noise again and saw a shadow walking

---

[1] The duplex had a small backyard enclosed by a chain link fence and a latched gate.  A sliding glass door provided access from the duplex to the backyard.

away from her window toward her backyard gate. She got out of bed, pulled the fan out of the window, latched the window, and closed the blinds. Miller looked out of the window and saw that her backyard gate was open, and that a man was standing in the backyard of the duplex located behind hers. She watched as the man lit a cigarette, walked to an adjoining duplex, looked in the window, and returned to his garage. The man then dropped his cigarette and started walking toward Miller's backyard gate. Miller's son yelled to her that the man was in their backyard. Miller and her son locked themselves in the bathroom while she called 911. As she waited for the police, Miller could hear "squeaking" and "thumping" noises coming from the vicinity of her bedroom window. Verbatim Report of Proceedings (Aug. 24-25, 2015) (VRP) at 36.

Police arrived and found Rose in Miller's backyard, facing Miller's bedroom window. Rose was intoxicated and wearing a t-shirt, boxer shorts, and sandals. He was placed under arrest and subsequently transported to the hospital after passing out. In Miller's backyard, police found a screen leaning against her duplex that had been removed from her bedroom slider window. The screen had a rectangle-shaped cut near the metal tab used to install the screen. The police also found a multi-tool on the ground below the window, with the knife blade extended. Finally, police found an exterior hand mark on the middle window pane and fingerprints on the sliding window pane. The State charged Rose with attempted residential burglary under RCW 9A.28.020 and 9A.52.025(1).

At trial, Miller, her son, and the responding officers testified to the above facts. Rose also testified. Rose did not contest any of the above facts or deny that he was the man Miller saw in her yard. Instead, he said that two days before the incident a plastic drink bottle was thrown from Miller's property into his yard, hitting his sliding glass door. Rose testified that, on the night of the incident, he was trying to leave a note for Miller to discuss the litter he found in his yard.

Rose testified that he started drinking at about 10:30 p.m. on the night in question. Rose stated that, in the hour and a half prior to the incident, he drank three shots of liquor and six beers. At approximately 11:30-11:45 p.m., he got into bed, felt sick, then got up and went to his backyard. Rose stated that as he stood in his backyard smoking a cigarette, he saw candy wrappers and another plastic drink bottle in his yard that had not been there earlier in the day. Rose stated that after seeing the litter he said loudly over the back fence, "Excuse me!" three times to someone he saw in Miller's duplex. VRP at 129-30. When Rose did not get a response, he started walking toward Miller's front door, but then he saw that the gate to the backyard was open so he went into the backyard to talk to Miller about the litter "right then and there." VRP at 131.

Rose testified that he was barefoot and stepped on something sharp, so he returned to his house to put on sandals. He then returned to Miller's duplex, walked past the kitchen window and sliding back door on his way to Miller's bedroom window, and knocked three times on the right-hand sliding window pane and screen.[2] He testified that when he knocked on the window he fell against the center window pane, touching the glass with his hand. When he did not receive a response, he decided to leave a note between the screen and the window so that it would not blow

---

[2] Miller's bedroom window had three panes of glass; the center pane did not open and there were screens covering the two sliding panes located at each end of the window.

away. Rose then tried to remove the screen, but was unable to do so and he started to leave. Rose stated that as he walked away, he stubbed his toe on the multi-tool. He picked up the multi-tool, made a slit in the screen, inserted his finger and unlatched the screen. Rose testified that as he tried to pull up the screen enough to put a note in, he fell and pulled the screen off of the window. Rose stated that he did not have a pen or a piece of paper with him to write a note. Rose testified that he was extremely intoxicated when he was arrested and, shortly thereafter, he blacked out and woke up in the hospital. Rose testified that the multi-tool did not belong to him. Miller testified that she did not own the multi-tool and that she had not seen it in her yard.

The State did not provide direct evidence that Rose intended to commit a crime once he entered Miller's residence, but asked the jury to infer that Rose intended to commit a crime therein.[3] Both parties discussed Rose's intoxication during closing arguments, but each gave it opposing weight as to the effect it had on Rose's mental state.

---

[3] The trial court also incorrectly instructed the jury as follows:

> A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.

CP at 45 (Jury Instr. No. 13). An inference of intent jury instruction is improper when the State only pleads and proves *attempted* residential burglary, as in the case at bar. *State v. Jackson*, 112 Wn.2d 867, 876, 774 P.2d 1211 (1989). There must be evidence of entering or remaining unlawfully in a building for this instruction to be properly given. *Jackson*, 112 Wn.2d at 876.

The State proposed jury instructions, but the instructions did not include a lesser included offense instruction on attempted first degree criminal trespass or an instruction on voluntary intoxication. Rose's counsel did not propose any changes to the State's proposed jury instructions. The trial court instructed the jury using the State's proposed instructions.

The jury found Rose guilty as charged of attempted first degree residential burglary. Rose appeals his conviction.

## ANALYSIS

### I. LEGAL PRINCIPLES

Due process requires the State to prove every element of the charged crime beyond a reasonable doubt. *State v. Kalebaugh*, 183 Wn.2d 578, 584, 355 P.3d 253 (2015). We review sufficiency of evidence claims for whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a challenge to the sufficiency of the evidence, the defendant admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Homan*, 181 Wn.2d at 106.

Circumstantial evidence and direct evidence carry equal weight. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). We defer to the fact-finder on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. B.J.S.*, 140 Wn. App. 91, 97, 169 P.3d 34 (2007). When "determining whether the necessary quantum of proof exists, [we] need not be convinced of the defendant's guilt beyond a reasonable doubt, but only that substantial evidence supports the State's case." *State v. Fiser*, 99 Wn. App. 714, 718, 995 P.2d 107 (2000).

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). We begin with a strong presumption that counsel's representation was reasonable. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient and (2) the defendant was prejudiced by the deficient performance. *State v. Humphries*, 181 Wn.2d 708, 719-20, 336 P.3d 1121 (2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Representation is deficient if, after considering all the circumstances, it falls "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 466 U.S. at 688). Legitimate trial tactics and strategies do not constitute deficient performance. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

## II. SUFFICIENCY OF THE EVIDENCE

Rose first argues that because he did not enter the Miller's residence, the State failed to provide sufficient evidence to prove beyond a reasonable doubt that Rose intended to commit a crime therein. We disagree.

To convict a person of residential burglary, the State must show that the defendant entered or remained unlawfully in a dwelling with the intent to commit a crime against a person or property therein. RCW 9A.52.025(1). Attempted residential burglary requires a person to take a substantial step toward committing residential burglary. *See* RCW 9A.28.020(1).

Nothing forbids a jury from inferring intent from proven facts, so long as it is satisfied the State has proven that intent beyond a reasonable doubt. *State v. Bencivenga*, 137 Wn.2d 703, 709, 974 P.2d 832 (1999). The fact that the crime charged here is attempted residential burglary does not change the analysis. *See Bencivenga*, 137 Wn.2d at 709. "Intent to attempt a crime also may be inferred from all of the facts and circumstances." *Bencivenga*, 137 Wn.2d at 709. What constitutes a "substantial step" toward committing the crime is a factual question. *State v. Workman,* 90 Wn.2d 443, 449, 584 P.2d 382 (1978).

Division One of our court has held that trying to break a lock without being noticed is sufficient to support an inference of a defendant's intent to commit a crime inside the apartment. *State v. Brooks*, 107 Wn. App. 925, 929-30, 29 P.3d 45 (2001) (reasoning that Brook's use of unconventional methods to gain access to the apartment indicated his intent to enter the apartment for illegal reasons). Similarly, our Supreme Court has held that trying to pry open a door of a restaurant in the early morning hours is sufficient to support an inference of a defendant's intent to commit a crime in the building. *Bencivenga*, 137 Wn.2d at 709.

Here, Rose entered Miller's fenced backyard at 11:30 in the evening. He used a knife to cut Miller's screen and remove it from her window. His handprint on Miller's window showed Rose's attempt to gain entry into the house. Rose testified that he wanted to leave Miller a note, but admitted that he had neither a pen nor paper to accomplish this task. The jury was not required to believe Rose's explanation. When viewing the evidence and all reasonable inferences in the light most favorable to the State, we hold that any rational trier of fact could have found that the State proved the essential elements of attempted first degree residential burglary beyond a reasonable doubt.

III. INEFFECTIVE ASSISTANCE OF COUNSEL

Rose next argues that he received ineffective assistance of counsel when his counsel failed to propose jury instructions for the lesser included offense of attempted first degree criminal trespass and for voluntary intoxication.[4] Rose argues that defense counsel's failure to propose a lesser-included instruction exposed him to a greater jeopardy of being convicted of attempted first degree residential burglary, a felony, rather than if counsel had requested the lesser included instruction of attempted first degree criminal trespass, a misdemeanor. We agree that Rose was entitled to a lesser included instruction of attempted first degree criminal trespass, defense counsel was deficient in failing to propose the instruction, and Rose was prejudiced as a result. Thus, Rose establishes a claim of ineffective assistance of counsel on this basis.

A defendant is entitled to a lesser included offense instruction if (1) each of the elements of the lesser included offense is a necessary element of the charged offense and (2) the evidence supports an inference that the lesser crime was committed to the exclusion of the greater charged offense. *State v. Fernandez-Medina*, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000). Because attempted first degree criminal trespass is a lesser included offense of attempted first degree residential burglary, only the factual prong is at issue here. *See State v. Pittman*, 134 Wn. App. 376, 385, 166 P. 3d 720 (2006), *abrogated on other grounds by Grier*, 171 Wn.2d at 38.

Here, the factual prong is met because the evidence supports a reasonable inference that Rose attempted to enter the house without intending to commit a crime. Thus, any rational jury

---

[4] Rose also argues that his counsel was ineffective for failing to propose a voluntary intoxication instruction. Because we reverse Rose's conviction on other grounds, we do not reach this issue.

could have found that Rose committed the lesser offense notwithstanding that sufficient evidence exists to prove the greater offense. Viewing the evidence in the light most favorable to Rose, the evidence showed that after drinking heavily prior to the incident, Rose went into Miller's backyard to talk to Miller "right then and there" about the litter in his yard. VRP at 131. While knocking three times on the right-hand sliding window pane and screen, he fell against the center window pane, touching the glass with his hand. When he did not receive a response, he decided to leave a note between the screen and the window so that it would not blow away. He then tried to remove the screen, but was unable to do so and he started to leave. As he walked away, he stubbed his toe on the multi-tool. He picked up the multi-tool, made a slit in the screen, inserted his finger and unlatched the screen. Rose testified that as he tried to pull up the screen enough to put a note in, he fell and pulled the screen off of the window.

Although Rose's defense was that he did not intend to commit a crime in Miller's house and did not even attempt to enter the house, but wanted to leave a note, the jury heard evidence that Rose's intent that night was to talk to Miller "right then and there." VRP at 131. Even if the jury disbelieved his story about wanting to leave a note, the jury could have found that Rose was attempting to enter the house to talk to Miller. Because the evidence supports the giving of the lesser included instruction of attempted first degree criminal trespass, Rose was entitled to the instruction.

We next consider whether counsel's failure to propose the instruction constitutes deficient performance. We start with a "strong presumption that counsel's performance was reasonable." *Kyllo,* 166 Wn.2d at 863. The defendant must establish the absence of any "conceivable legitimate

tactic explaining counsel's performance." *State v. Reichenbach,* 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

Here, we do not agree that counsel's all-or-nothing approach, especially when combined with the erroneously given inference instruction, was a conceivably legitimate strategy to secure an acquittal. We can conceive of no reason counsel would have sought an all-or-nothing approach in an attempt to secure an acquittal while also agreeing to an instruction that allowed the jury to infer that Rose intended to commit a crime within the residence.

We next consider whether counsel's failure to propose a lesser included offense instruction prejudiced Rose. Here, absent the improper jury instruction, there was scant evidence that Rose was intending to commit a crime inside Miller's house. Thus, Rose's counsel's failure to propose a lesser included offense instruction prejudiced Rose because if the jury disbelieved Rose's defense, the only crime presented to them was the felony. Defense counsel's all-or-nothing strategy exposed Rose to a greater penalty, a class B felony of attempted first degree residential burglary with direct and collateral consequences associated with a felony record. RCW 9A.52.025(2). In contrast, if defense counsel had offered a lesser included offense instruction of attempted first degree criminal trespass, if convicted, Rose would have been exposed to a lesser crime of a misdemeanor. RCW 9A.36.041(2), RCW 9A.20.021(2). Because Rose was entitled to the lesser included offense instruction, we hold that counsel's failure to request the instruction was deficient and prejudiced Rose. Rose prevails on his claim of ineffective assistance of counsel, and thus, we reverse Rose's attempted first degree residential burglary conviction.

No. 47989-3-II

We reverse and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
SUTTON, J.

We concur:

_____
WORSWICK, P.J.

_____
MELNICK, J.