# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>            Respondent,<br><br>        v.<br><br>ANTONIO INDA,<br><br>            Appellant. | DIVISION ONE<br><br>No. 81069-3-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — Antonio Inda appeals his convictions of murder in the second degree with a firearm enhancement and unlawful possession of a firearm in the second degree. Inda contends that (1) the juvenile court erred by not ruling on his claim of racial bias before declining jurisdiction, (2) supplemental security measures ordered by the trial court denied him a fair trial, (3) the to-convict instruction relieved the State of its burden of proof, (4) he was denied effective assistance of counsel with regard to an instruction defining accomplice liability, (5) his refusal to consent to a search was unconstitutionally used as substantive evidence of guilt, and (6) cumulative error denied him a fair trial. Finding none of these claims meritorious, we affirm.

I

Arturo Alvarez was killed in a drive-by shooting in April 2017, amidst an escalating gang war in south King County. The shots that killed Alvarez were fired from a vehicle driven by Alondra Garcia-Garcia. Fifteen-year-old Antonio

Inda, Miguel Bejar Jr., Sergio Contreras, Salvador Estrada-Bautista, and Margarita Alvidrez-Rodriguez were passengers in that vehicle.

Inda was initially charged in juvenile court with murder in the second degree with a firearm enhancement. The State moved to decline jurisdiction and transfer the case for adult prosecution. Following a declination hearing, the motion was granted.

In superior court, Inda's case was joined with those of his adult codefendants, Garcia-Garcia and Bejar. Garcia-Garcia was charged with rendering criminal assistance. Bejar and Inda were charged with murder in the second degree.

Eventually, Garcia-Garcia pleaded guilty to an amended information charging her with murder in the second degree with a firearm enhancement. The State also amended the charges against Bejar and Inda, charging each defendant with murder in the first and second degrees, with firearm enhancements, as well as with unlawful possession of a firearm (Bejar in the first degree and Inda in the second).

At trial, the State adduced evidence that Bejar and Inda each fired bullets at Alvarez. Inda testified and denied that he had possessed a firearm or shot at Alvarez.

Inda was convicted of murder in the second degree with a firearm enhancement.[1] Bejar was convicted of murder in the first degree. At a

---

[1] Inda was also charged and found guilty of murder in the second degree by means of felony murder. This conviction was subsequently vacated so as not to run afoul of double jeopardy protections.

subsequent trial, Inda and Bejar were each also convicted of unlawful possession of a firearm.

Inda appeals.

II

Inda, who self-identifies as "Hispanic," first contends that the juvenile court erred by not ruling on his claim of racial prejudice. As Inda did not advance such a claim before the juvenile court, we disagree.

"[T]rial courts must be vigilant in addressing the threat of explicit or implicit racial bias that affects a defendant's right to a fair trial." State v. Quijas, 12 Wn. App. 2d 363, 375, 457 P.3d 1241 (2020). "[O]nce a claim of racial bias is raised, investigations into allegations of racial bias are conducted on the record and with the oversight of the court." State v. Berhe, 193 Wn.3d 647, 661, 444 P.3d 1172 (2019). Thus, we have held that a juvenile court is required to rule on the question of whether racial bias influenced a declination proceeding when the juvenile alleged that juvenile court jurisdiction is declined in a racially disproportionately manner, citing due process and equal protection concerns. Quijas, 12 Wn. App. 2d at 367, 374. When confronted by a claim, supported by some evidence in the record, that racial prejudice has tainted the declination process, the juvenile court is required to rule on the claim. Quijas, 12 Wn. App. 2d at 375.

Inda asserts that the juvenile court herein made the "same error" as was made by the juvenile court in Quijas.[2] However, Inda did not argue, in either the

---

[2] Br. of Appellant at 17.

written memorandum submitted to the juvenile court or in his oral presentation to the juvenile court, that the declination process herein was racially biased. Instead, Inda argued that consideration of the Kent[3] factors, as well as ongoing research about adolescent brain development, required the juvenile court to retain jurisdiction. The only reference to race in Inda's memorandum appeared in a section in which he argued that the eighth Kent factor, "the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile . . . by the use of procedures, services and facilities currently available to the Juvenile Court," supported a decision to retain jurisdiction. Specifically, Inda argued that

> [p]utting Antonio in the adult system is not about rehabilitation, services he will receive, or, in light of the research, public safety. It is about what the State ultimately is always about: locking up young men—particularly Hispanic and black men—as long as possible and removing them from society for the better part of their lives. It may not be always conscious effort, but the net effect is always the same.

Inda supported this argument by citing a 2014 bulletin by the Washington State Partnership Council on Juvenile Justice, which he quoted in a footnote to the memorandum as follows: "A high percentage of youth of color are transferred to adult criminal court jurisdiction, more so pursuant to the automatic decline law (exclusive original adult court jurisdiction), contributing to significant racial and ethnic disparities."[4] While these statements note that racial disproportionality

---

[3] Kent v. United States, 383 U.S. 541, 566-67, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966). The Washington Supreme Court adopted the factors enumerated in Kent to govern declination hearings in Washington. State v. Williams, 75 Wn.2d 604, 606-07, 453 P.2d 418 (1969).

[4] The bulletin, which is further quoted in Inda's briefing on appeal, was not filed with the trial court and does not appear in the record.

exists within the criminal legal system and that juvenile transfers (particularly automatic ones, unlike the one at issue herein) contribute to that disproportionality, they are not a claim that racial bias tainted Inda's declination process. Nor do they identify a particular constitutional right as being at issue. Had Inda advanced such claims, the juvenile court would have been required to rule on them. As he did not, the juvenile court was not required to do so. No trial court error is established.

III

Inda next contends that supplemental security measures used at trial were inherently prejudicial. This issue was also raised on appeal by Inda's codefendant, Bejar. See State v. Bejar, 18 Wn. App. 2d 454, 465, 491 P.3d 229, review denied, 198 Wn.2d 1029 (2021). As a result, we have previously addressed this issue with regard to these specific security measures and have determined that they were not inherently prejudicial. We thus reject Inda's claim of error.

Concerned about witness safety given the context of the shooting—a gang conflict escalated by social media[5]—the trial court issued a written order on courtroom security. The order stated that its purpose was "to provide the parties a fair trial, to preserve the dignity of these proceedings, and ensure witness safety." The order described secondary screening measures as follows:

> 1. Persons entering the courtroom may be subjected to secondary screening, including use of a magnetometer, handheld metal detector, and pat down searches. Persons who fail to comply with

---

[5] One witness, Estrada-Bautista, testified that he had been called a "snitch" repeatedly on social media prior to being shot at, which he believed to be in connection to his participation in this investigation and trial.

> screening requirements will not be permitted access to the courtroom.
>
> 2. Except as specifically authorized in this document or by separate order of the Court, no cell phones, cameras, or other electronic devices capable of audio or video recording, or component parts of such devices, will be permitted in the courtroom. Persons entering the courtroom may be required to leave such devices with security personnel.

The order stated that jurors were required to go through secondary screening but could keep their laptops, tablets, and cell phones as long as they were wearing their juror badges. According to Inda, the order was posted outside the courtroom door during trial.[6]

The presumption of innocence is a basic component of a fair trial under our system of justice. State v. Jaime, 168 Wn.2d 857, 861, 233 P.3d 554 (2010). "In order to preserve a defendant's presumption of innocence before a jury, the defendant is 'entitled to the physical indicia of innocence which includes the right of the defendant to be brought before the court with the appearance, dignity, and self-respect of a free and innocent man.'" Jaime, 168 Wn.2d at 861-62 (quoting State v. Finch, 137 Wn.2d 792, 844, 975 P.2d 967 (1999)). "'Measures which single out a defendant as a particularly dangerous or guilty person threaten his or her constitutional right to a fair trial.'" Jaime, 168 Wn.2d at 862 (quoting Finch, 137 Wn.2d at 845). "Such measures threaten a defendant's right to a fair trial because they erode his presumption of innocence; these types of courtroom practices are inherently prejudicial." Jaime, 168 Wn.2d at 862.

---

[6] It is unclear from the record whether the order was actually posted outside of the courtroom door. The court indicated that the order was to be posted, but there is no information as to whether the order was in fact posted.

6

As we explained when Inda's codefendant made an identical assertion on appeal, requiring jurors to go through the exact secondary screening here at issue and the posting of the written order on the courtroom door were not inherently prejudicial:

> In short, requiring jurors to go through a secondary screening on the first day of trial and posting a written order on the courtroom door stand in stark contrast to other security measures found inherently prejudicial, such as holding a trial in a jailhouse and shackling a defendant. See Jaime, 168 Wn.2d at 863-64 (holding a trial in a jailhouse courtroom is inherently prejudicial); State v. Finch, 137 Wn.2d 792, 844-47, 975 P.2d 967 (1999) (inherently prejudicial for a defendant to appear before a jury in shackles). This secondary screening here is more similar to Flynn[7] and Hayes[8] where the Supreme Court and the Ninth Circuit respectively found that courtroom security guards and courtroom entry-screening procedures similar to those used here were not inherently prejudicial. We conclude that neither requiring the jurors to go through secondary screening on the first day of trial nor posting the court's written courtroom security order on the courtroom door was inherently prejudicial.

Bejar, 18 Wn. App. 2d at 465.

We adopt the reasoning and analysis of the court in Bejar. On that basis, we conclude that Inda was not denied a fair trial.[9]

IV

Inda next avers that a reference to an accomplice in the to-convict instruction improperly allowed the jury to convict Inda without requiring the State to prove every essential element of the crime. This is so, according to Inda, because the jury could have concluded that an accomplice to Bejar other than

---

[7] Holbrook v. Flynn, 475 U.S. 560, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986).

[8] Hayes v. Ayers, 632 F.3d 500 (9th Cir. 2011).

[9] Inda filed a motion to strike several footnotes in the State's brief referencing documents from other cases. We did not consider these documents; we deny Inda's motion to strike.

Inda caused Alvarez's death. As this claim was not properly preserved for appeal, we decline to review it.

We may decline to review any claim of error that was not raised in the trial court. RAP 2.5(a); State v. O'Hara, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009); see State v. Wilson, 10 Wn. App. 2d. 719, 721 n.1, 450 P.3d 187 (2019) (denying review of an alleged error in a to-convict instruction because it was not objected to at trial). An exception exists when the claimed error is a "manifest error affecting a constitutional right." RAP 2.5(a)(3); O'Hara, 167 Wn.2d at 98. But RAP 2.5(a)(3) does not permit all asserted constitutional claims to be raised for the first time on appeal. Rather, it affords review of only certain questions of "manifest" constitutional magnitude. Our Supreme Court has rejected the argument that all trial errors that implicate a constitutional right are reviewable under RAP 2.5(a)(3), noting that "[t]he exception actually is a narrow one, affording review only of 'certain constitutional questions.'" State v. Scott, 110 Wn.2d 682, 687, 757 P.2d 492 (1988) (quoting RAP 2.5 cmt. (a)).

Under RAP 2.5(a)(3), establishing that a claimed error is "manifest" requires a showing of actual prejudice. State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). "'Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case.'" Kirkman, 159 Wn.2d at 935 (internal quotation marks omitted) (quoting State v. WWJ Corp., 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)).

Here, the State's theory of the case was that both Inda and Bejar fired guns at Alvarez and that, although it was unclear which of the two had fired the bullet which struck and killed Alvarez, the one whose bullet had not killed Alvarez was nevertheless guilty as an accomplice.

The jury was given a standard accomplice liability instruction and was further instructed that, to convict Inda, it was required to find beyond a reasonable doubt

> (1) That on or about the 11th day of April, 2017, the defendant Antonio Inda acted with an intent to cause the death of Arturo Alvarez;
> (2)  That Arturo Alvarez died as a result of the acts of the defendant Antonio Inda or an accomplice; and
> (3) That the acts occurred in the State of Washington.

Jury Instruction 22.

Inda's trial counsel objected to the instruction, arguing that this wording—specifically the phrase "the defendant Antonio Inda or an accomplice"—allowed Inda to be convicted if the jury found that an accomplice to Bejar —such as Garcia-Garcia—caused Alvarez's death.  Inda did not, however, object on the ground that the resulting instruction relieved the State of its burden of proving every element of the offense.

Inda contends that this alleged error is of constitutional magnitude because it allowed the State to obtain a conviction without proving that Alvarez died as a result of his actions or the actions of a person for whom he was responsible.  Omitting an element of a charged crime from a to-convict instruction is a constitutional error.  O'Hara, 167 Wn.2d at 101; State v. Boss, 144 Wn. App

9

878, 894, 184 P.3d 1264 (2008), aff'd on other grounds, 167 Wn.2d 710, 223 P.3d 506 (2009).

Jury instructions are read as a whole and in a commonsense manner. See State v. Pittman, 134 Wn. App. 376, 382-83, 166 P.3d 720 (2006), abrogated on other grounds by State v. Grier, 171 Wn.2d 17, 246 P.3d 1260 (2011). They are legally sufficient if they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. State v. Barnes, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005).

Interpreting the instruction as Inda asks us to would require jurors to read "Antonio Inda or an accomplice" to mean something other than "Antonio Inda or an accomplice to Inda." This reading is not one that is natural or comports with commonsense. Rather, the reading that Inda suggests—that "an accomplice" could refer to an accomplice to someone other than Inda—is a strained reading of the instruction. Inda cites no authority for his proposition that the phrase "or an accomplice" is problematic in cases with multiple potential accomplices. If "an accomplice" could mean an accomplice to anyone, rather than an accomplice to the defendant mentioned in the instruction, it would be problematic in any to-convict instruction. Yet the phrase "or an accomplice" is regularly used in cases in which accomplice liability is at issue and has received the explicit approval of our Supreme Court. See State v. Teal, 152 Wn.2d 333, 336 n.3, 96 P.3d 974 (2004) ("[T]he better practice in a case prosecuted on the theory of accomplice liability might be to include the language 'the defendant or an accomplice' in a 'to convict' instruction."). Furthermore, this phrasing also avoids using a phrase

such as "his accomplice," which could be construed as an impermissible judicial comment on the evidence because it presupposes that the defendant had an accomplice. See State v. Fallentine, 149 Wn. App. 614, 626, 215 P.3d 945 (2009) (finding use of the phrase "his accomplice" did not prejudice defendant where State's theory of the case and undisputed evidence suggested that defendant was the accomplice, not the principal).

Given this context, Inda does not demonstrate actual prejudice resulting from the claimed error. We thus decline to review this issue.

V

Inda next asserts that his trial counsel's failure to propose an alternative instruction more narrowly defining accomplice liability constituted ineffective assistance of counsel. We disagree.

In order to succeed on an ineffective assistance of counsel claim, the defendant must demonstrate both that (1) the attorney's performance was deficient and (2) the defendant was prejudiced by that deficient performance. In re Det. of Hatfield, 191 Wn. App. 378, 401, 362 P.3d 997 (2015) (quoting State v. Borsheim, 140 Wn. App. 357, 376, 165 P.3d 417 (2007)). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Strickland v. Washington, 466 U.S. 668, 700, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

"Deficient performance is that which falls below an objective standard of reasonableness." State v. Weaville, 162 Wn. App. 801, 823, 256 P.3d 426 (2011). To show prejudice, "[i]t is not enough for the defendant to show that the

errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. Rather, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In determining whether there is a reasonable probability that the errors impacted the outcome of the proceeding, we are to consider the "totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695.

Here, the State's theory of the case was that Bejar and Inda each shot at Alvarez, that it was unclear which of the two fired the bullet that caused Alvarez's death, and that each defendant was responsible for the death based on a theory of accomplice liability as to the element of causation. The State indicated that it was not seeking to prove accomplice liability for acts other than shooting a gun. Accordingly, the trial court did not instruct the jury as to a lesser offense— manslaughter in the second degree—that Inda's counsel argued a general theory of accomplice liability would have put at issue.

The jury was issued a standard accomplice liability instruction, consistent with 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 10.51 (6th ed. 2012):

> A person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable. A person is legally accountable for the conduct of another person when he is an accomplice of such other person in the commission of the crime.

> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he aids another person in committing the crime.
> The word "aid" means all assistance in committing the crime. More than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

Jury Instruction 13.

According to Inda, his counsel was ineffective because the attorney did not propose a modified version of the issued instruction which would have more specifically limited his accomplice liability to liability only for firing a gun. But, at trial, the State did not argue or adduce evidence indicating that Inda acted as an accomplice in any way other than as a shooter. Given this context, there is not a reasonable probability that, had Inda's counsel proposed a different instruction, the outcome of the proceeding would have been different. Moreover, Inda's assertion that he was prejudiced relies on the notion that, had the State pursued a more general theory of accomplice liability, additional lesser offense instructions would have been required. Greater specificity as to this claim does not appear in the appellate briefing. And even if it did, Inda does not show that he would be able to meet the demanding standard to establish prejudice in such a circumstance. See Grier, 171 Wn.2d at 44 (holding that because juries are presumed to follow their instructions, which require acquitting on the greater charge before considering lesser offenses, availability of a "compromise verdict" would not have changed guilty finding).

To find prejudice, the Strickland opinion requires that we determine that the claimed error "undermine[d our] confidence in the outcome" of the trial. 466

U.S. at 694. We are not of such a mindset with regard to this proceeding. Thus, Inda has not established prejudice. His claim of error fails.

VI

Inda next asserts that testimony indicating that his social media and cell phone records were obtained pursuant to a warrant improperly prejudiced him based on his exercise of his constitutional right to refuse warrantless searches. We disagree.

The use of a defendant's refusal to consent to a search as substantive evidence of guilt can constitute a constitutional violation because it penalizes the defendant for exercising the protections of the Fourth Amendment or article I, section 7. State v. Gauthier, 174 Wn. App. 257, 267, 266-67, 298 P.3d 126 (2013) (prosecutor's statement that refusing DNA search was consistent with guilt impermissible violation of constitutional rights).

Here, no evidence that Inda refused to consent to a search was introduced. A police detective testified that Inda's Facebook account—like that of all involved individuals, including Estrada-Bautista—was acquired through "judicial authorization" from Facebook. Additionally, an exhibit was admitted indicating that Inda's cell phone records had been acquired from T-Mobile in response to a search warrant. There was no testimony elicited that Inda refused to cooperate by providing cell phone or social media records to investigators. Moreover, as these records were not obtained from Inda pursuant to a warrant, but were instead obtained from T-Mobile and Facebook respectively, there was no implication that Inda was asked to provide these records and refused.

14

Inda contends that testimony regarding Estrada-Bautista's action of voluntarily providing his cell phone records to the police was used in contrast to him. But no comments were made indicating that Estrada-Bautista's cooperation was indicative of innocence, and testimony was elicited that Estrada-Bautista's Facebook records were provided by Facebook with "judicial authorization," just as were Inda's.

No evidence was admitted implying that Inda exercised his right to refuse a warrantless search. No entitlement to appellate relief on this claim is established.

VII

Finally, based on the assignments of error discussed above, Inda asserts that he has a right to a new trial due to cumulative error. Cumulative error is established when, taken alone, several trial court errors do not warrant reversal of a verdict but the combined effect of the errors denied the defendant a fair trial. State v. Hodges, 118 Wn. App. 668, 673-74, 77 P.3d 375 (2003). It is the defendant's burden to prove an accumulation of error of sufficient magnitude to necessitate retrial. In re Pers. Restraint of Lord, 123 Wn.2d 296, 332, 868 P.2d 835, 870 P.2d 964 (1994). Herein, Inda makes this assertion without support. He has not established any prejudicial error, let alone the confluence of the many errors that would give rise to a ruling of cumulative error. Accordingly, Inda's claim fails.

Affirmed.

_Dwyer, J._

WE CONCUR:

_Andrus, A.C.J._